NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| : | |
| : | |
| LYNN HENDERSON, KRISTINA : | |
| KULON, B. DAVID MORBY, JASON : | |
| ROBINSON, KEVIN MORRIS, and : | |
| JOHN LEET, individually and on behalf : | |
| of others similarly situated, : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, : | |
| : | **OPINION** |
| v. : | |
| : | Civ. No. 09-4146 (DMC) (JAD) |
| VOLVO CARS OF NORTH AMERICA, : | |
| LLC, and VOLVO CAR : | |
| CORPORATION, : | |
| : | |
| Defendants. : | |
| : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon motion of Defendant Volvo Cars of North America, LLC ("Defendant"). Plaintiffs Lynn Henderson, Kristina Kulon, B. David Morby, Jason Robinson, Kevin Morris and John Leet (collectively, "Plaintiffs") have asserted claims for breach of express warranty (Counts II), breach of the implied warranty of merchantability (Counts III), unjust enrichment (Count IV), common law fraud (Count V), negligent misrepresentation (Count VI), breach of the duty of good faith and fair dealing (Count VII), breach of express and implied warranties under California's Song-Beverly Act (Counts X-XI) and for violations of the New Jersey, California, Massachusetts, Florida and Washington consumer protection statutes (Counts I, VIII, IX, XII, XIII and XIV). Defendant has moved to dismiss pursuant to FED. R. CIV. P. 9(b) and 12(b)(6).

No oral argument was heard pursuant to FED. R. CIV. P. 78.  Upon consideration of the parties' submissions, and for the reasons stated below, Defendant's motion to dismiss is **granted in part** and **denied in part**.

## I.  BACKGROUND[1]

Volvo first introduced its mid-sized luxury XC90 SUV in 2003.  See First Amended Complaint ("Comp."), ¶ 80.  At the time, Volvo offered XC90 consumers a choice of two engine options:  a 5 cylinder turbocharged engine rated at 205 hp and 236 ft-lbs of torque ("T5") or the high-output 6 cylinder twin-turbocharged engine rated at 268 hp and 280 ft-lbs of torque ("T6").  Id. Unlike the T5, the T6 model only came equipped with All-Wheel Drive ("AWD").  Id.

Due to the design of the T6 with AWD, Volvo was unable to utilize the same 5-speed automatic transmission used in the T5.  Id. ¶ 81.  Instead, Volvo outfitted the T6 with a GM sourced, and Volvo modified, transmission ("4T65 transmission" or "transmission").  Id. Volvo incorporated computer control programming over the transmission through use of the Transmission Control Module ("TCM").  Id. ¶ 86.  Plaintiffs allege that this combination resulted in severe drivability problems and transmission failure.  Id. Volvo has issued at least two Technical Service Bulletins ("TSB") to address these problems.  Id. ¶¶ 87, 88.

Volvo performed other modifications to the 4T65 transmission specifically tailored to the T6 in order to accommodate the engine's high output, accompanying heavy vehicle weight, and AWD system.  Id. ¶ 89.  Plaintiffs assert that such modifications and designs caused numerous problems in the T6 platform, for example premature transmission failure under normal operating conditions

---

[1] The facts in the Background Section have been taken from the parties' submissions.

well in advance of its expected useful life.  Id. ¶¶ 3, 90, 100.

Plaintiffs assert that Volvo has been aware of the transmission problem in the T6 platform for years, as evidenced by:  widespread complaints of transmission problems on the internet; complaints to the National Highway Traffic Safety Administration ("NHTSA"); complaints received by Volvo; technical service bulletins issued by Volvo in attempts to address this known problem. Id. ¶¶ 4, 106.  Despite this knowledge, Plaintiffs contend, Volvo has intentionally withheld from, and/or misrepresented such material information to, Plaintiffs and other XC90 consumers.  Id. ¶ 4. As a result, Volvo has benefitted from collecting funds from Plaintiffs and other customers for vehicle repairs related to the transmission problem when in fact Volvo knew the true cause of the problem was the defective vehicle design of the T6.  Id. ¶ 5.

The six named Plaintiffs purchased 2003-2005 XC90 vehicles with 4T65 automatic transmissions.  Id. ¶¶ 16-71.  Of these six Plaintiffs, four purchased their vehicles used.  Id. ¶¶ 17, 27, 38, 57.  According to the Complaint, Volvo warranted that these vehicles would be free of defects for a period of 4 years or 50,000 miles.  Id. ¶ 103.  Plaintiffs all allege that they were alerted to potential transmission problems when their vehicles had been driven beyond the 50,000 mile express warranty limit.  Id. ¶¶ 16-71.  Nevertheless, in four out of the six cases, Volvo paid for the transmission repair, in whole or in part.

Plaintiffs assert fourteen causes of action:  violation of the New Jersey Consumer Fraud Act (Count I), breach of express warranty (Counts II), breach of implied warranty of merchantability (Count III), unjust enrichment (Count IV), common law fraud, (Count V), negligent misrepresentation (Count VI), breach of the duty of good faith and fair dealing (Count VII), breach of express and implied warranties under California's Song-Beverly Act (Counts X-XI)  as well as

violations of the consumer protection laws of California, Massachusetts, Florida, and Washington (Counts VIII, IX, XII, XIII, XIV).

## II.  <u>STANDARD OF REVIEW</u>

### A.  F<span>ED</span>. R. C<span>IV</span>. P. 12(b)(6)

In deciding a motion to dismiss pursuant to F<span>ED</span>. R. C<span>IV</span>. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.</u>, 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 ( 1984).  In <u>Bell Atlantic Corp. v. Twombly</u> the Supreme Court clarified the Rule 12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." <u>Twombly</u>, at 1968 (citing <u>Conley</u>, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. <u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165, 173 (3d Cir. 2000).

**B. FED. R. CIV. P. 9(b)**

Fraud-based claims are subject to FED. R. CIV. P. 9(b). <u>Dewey v. Volkswagon</u>, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007) (citing <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Id.</u>

## III. DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint in its entirety. The Court will separately consider Defendant's motion as to each of Plaintiffs' set of claims: **(A)** fraud-based claims, **(B)** claim for breach of express warranty, **(C)** claim for breach of implied warranty of merchantability, **(D)** unjust enrichment claim, **(E)** negligent misrepresentation claim, **(F)** claim for breach of the duty of good faith and fair dealing, **(G)** claims for breach of express/implied warranty brought pursuant to California's Song-Beverly Act.[2]

---

[2] With respect to the Counts based on various state consumer fraud laws (see Section III.A), a choice of law analysis is not necessary as Defendant moves based exclusively on its challenge to the specificity of the pleadings under FED. R. CIV. P. 9(b), "an issue on which federal procedural law is controlling." See Doc. No. 20, at 9; see also <u>Dewey</u>, 558 F. Supp. 2d at

**A.**     **COUNT I (NJCFA), COUNT V (COMMON LAW FRAUD), COUNTS VIII, IX, XII, XIII AND XIV (CONSUMER PROTECTION LAWS OF CALIFORNIA, MASSACHUSETTS, FLORIDA AND WASHINGTON)**

Defendant moves to dismiss Plaintiffs' fraud-based claims pursuant to Rule 9(b).  First, Defendant asserts that Plaintiffs' claims based upon alleged misrepresentations must be dismissed as the pleadings lack critical information; specifically Defendant argues that "Plaintiffs have not identified any representation that they received, read, and considered prior to their vehicle purchase. Nor have they alleged how, when and where they received any specific representation."  See Doc. No. 20, at 10..  Second, Defendant asserts that Plaintiffs' fraud claims based upon omissions also fail for lack of specificity, as Plaintiffs have not alleged "what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." Id. at 12.

Plaintiffs respond that the Amended Complaint satisfies Rule 9(b) because it puts "'the [D]efendant[s] on notice of the precise misconduct with which [they are] charged.'"  See Dewey, 558 F. Supp. 2d 505, 526 (quoting Strzakowlski v. General Motors Corp., 2005 U.S. Dist. LEXIS

---

526 ("At the outset, it should be noted that there is a serious question whether New Jersey's Consumer Fraud Act should be applied to non-New Jersey Plaintiffs Dewey and Romeo. Nevertheless, because neither party has adequately briefed the choice-of-law issue and compared the relevant state consumer fraud statutes, the Court is unwilling to dismiss Plaintiff Dewey and Romeo's CFA claim at this time.").

The parties agree that, for the purposes of this motion, the Court need not conduct a choice of law analysis on Plaintiffs' other claims.  See Doc. No. 22, at 10-11; Doc. No. 20, at 9 ("For purposes of the specific issues raised by this motion as to Named Plaintiffs only, Volvo will assume that Plaintiffs are correct and that New Jersey law can properly be applied to Named Plaintiffs' claims for express warranty (Count II), implied warranty (Count III), unjust enrichment (Count IV), negligent misrepresentation (Count VI), and breach of the duty of good faith and fair dealing (Count VII).").

18111, *6 (D.N.J. Aug. 16, 2005)).[3]  Specifically, in the Complaint, Plaintiffs allege that the class product has a common defect, that Defendant was aware of the defect and that Defendant failed to disclose it.  See Doc. No. 22, at 7.  Plaintiffs detail the facts surrounding the alleged defect, and cite to numerous complaints about the defect received by Volvo (which recognize the defect and explain its consequences).  See id.

The adequacy of Plaintiffs' pleadings as to fraud based upon misrepresentations and omissions will be considered in turn.

### 1.   Material Misrepresentations

Defendant asserts that Plaintiffs have failed to adequately plead their fraud claims premised upon alleged misrepresentations.  This Court agrees.

Plaintiffs have only made vague assertions with respect to their affirmative misrepresentation fraud claims.  For instance, in the Amended Complaint, with respect to their NJCFA claims, Plaintiffs assert that

> 127.  Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA. Specifically, Defendants were aware that model years 2003 through 2005 of the Volvo XC90 T6 suffered from a common design defect resulting in transmission problems, but failed to disclose this to Plaintiffs and Class members. Defendants also marketed these luxury vehicles as being of superior quality when the class vehicles contained a known defect. These affirmative misrepresentations were material to the vehicle purchases, and were false statements of fact.

_____

[3] Although the Court agrees with Defendant that the purpose of the pleading requirements of Rule 9(b) is not limited to ensuring adequate notice-pleading—it is also intended to "provide an increased measure of protection for [Defendant's] reputations, and [to] reduce the number of frivolous suits brought solely to extract settlements"—this Court finds that dismissal with prejudice is not proper here.  Klein v. Autek Corp., 147 Fed. Appx. 270, 276 n.2 (3d Cir. 2005).

128.   Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions. Defendants knowingly failed to disclose the design defect in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.

Comp. ¶¶ 127-28.  With respect to Plaintiffs' common law fraud claims, Plaintiffs assert that

153. Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the transmission, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

154. These omissions and statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely on them.

Id.  ¶¶ 153-54.  As indicated by these excerpts—and the pleadings in their totality—the focus of Plaintiffs' fraud-based claims appear to be primarily premised on fraudulent omissions, as opposed to affirmative misrepresentations.   The portions of the Complaint that do reference misrepresentations are summary in nature, and cannot suffice to state an adequate claim under Rule 9(b).

In Dewey v. Volkswagen AG, the Court explained that Plaintiff's fraud claims based on alleged misrepresentations were insufficiently plead as to all requisite elements.  Dewey, 558 F. Supp. 2d at 526.  There, the plaintiffs contended that based on the manufacturer's "representations [i.e., statements on Volkswagen's website and in the car owner's manual], upon which Plaintiffs relied, . . . Plaintiffs and other members of the Class leased and/or owned a Class Vehicle . . . ."  Id. The plaintiffs then summarily asserted that "[t]hese material misstatements and omissions had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles . . ." to their detriment.  Id.  The Court dismissed the affirmative misrepresentation claims, noting

that that "[w]ith regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements." Id.; see also In re GMC Anti-Lock Brake Prods. Liab. Litig., 966 F. Supp. 1525, 1531, 1535.  Similarly, here, Plaintiffs' broad assertions that Defendant marketed its vehicles as being of superior quality when the class vehicles contained a known defect is not sufficiently specific.  Even taking the pleadings as true, this Court does not know the context of the alleged statements, and effect that any of the statements had on Plaintiffs.  Accordingly, this Court finds Plaintiffs fraud claims that are based on affirmative misrepresentations are inadequately plead.

Moreover, although at this time Defendant moves to dismiss exclusively based on failure to satisfy the pleading requirements of Rule 9, the Court notes that general statements made about a car's quality may amount to mere puffery as opposed to a true misrepresentation.  In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., 2009 U.S. Dist. LEXIS 82833, at *26-32 (D.N.J. Sept. 10, 2009) (dismissing fraud-based claims premised on alleged misrepresentations because the statements were "general, vague or exaggerated," and were therefore puffery); GMC Anti-Lock Brake Prods., 966 F.Supp at 1534.  This, however, need not be resolved here.

Accordingly, Plaintiff's claims based on allegedly affirmative misrepresentations are dismissed without prejudice.

### 2.  Material Omissions

Defendant argues that Plaintiffs' omissions claims are insufficient under Fed. R. Civ. P. 12(b)(6) and 9(b).  Specifically, Defendant asserts that Plaintiffs simply detail the alleged defect with the transmission, without explaining how the manufacturer (Volvo) acted fraudulently in failing to

provide notice of the alleged defect.   This Court finds that, at this stage, Plaintiffs have adequately

plead their fraud claims premised upon alleged omissions.

Plaintiffs, in support of their omissions claims assert that Defendant

omitted material information regarding the vehicles in question.  Plaintiffs assert that:
Defendants were aware that model years 2003 through 2005 of the Volvo XC90 T6
suffered from a common design defect resulting in transmission problems, but failed
to disclose this to Plaintiffs and Class members. . . .

Defendants did not fully and truthfully disclose to its customers the true
nature of the inherent design defect with the transmission, which was not readily
discoverable until years later, often after the warranty has expired.  As a result,
Plaintiffs and the other Class Members were fraudulently induced to lease and/or
purchase the Class Vehicles with the said design defects and all of the resultant
problems.

Am. Comp.  ¶¶ 138-40.

A plaintiff who asserts a fraud claim based on omission must "allege what the omissions

were, the person responsible for failing to disclose the information, the context of the omission and

the manner in which it misled plaintiff and what defendant obtained through the fraud."  GMC

Anti-Lock Brake Prods., 966 F.Supp at 1536;  Weaver v. Chrysler Corp., 1997 U.S. Dist. LEXIS

3769, *10, (S.D.N.Y. 1997); see Snyder v. Ford Motor Co., 2006 U.S. Dist. LEXIS 63646 (N.D. Cal.

Aug. 24, 2006) (citing Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001)).  Although the

Court agrees with Defendant that certain aspects of Plaintiffs' pleadings are sparse—e.g., what party

should have disclosed the defect (Volvo or a dealer), how the disclosures should have been made,

and to what types of consumer must the disclosures be made (new car purchasers or all

purchasers)[4]—the claims here are sufficient to withstand dismissal at this early stage.

_____

[4] See, e.g., Dewey, 558 F. Supp. 2d at 526.

-10-

Another Court in this District, in <u>Maniscalco v. Brother Int'l Corp.</u>, 627 F. Supp. 2d 494, 500

(D.N.J. 2009), considered a motion to dismiss in analogous circumstances. There, the plaintiff

brought a New Jersey Consumer Fraud Act claim alleging that the defendant, a manufacturer of

multi-function printers, defrauded its customers by marketing a product it knew to be defective. <u>See</u>

<u>id.</u> at 497. To proceed on a NJCFA claim, the plaintiff was required to show that the defendant

knowingly omitted a material fact in advertising or selling the product. <u>See id.</u> at 500. There, the

plaintiff generally alleged that Defendant violated the NJCFA by:

> [m]arketing, advertising, and selling machines that they know are likely to fail due to
> the ME41 defect before their expected useful life of five years or 50,000 pages of
> printed material, while intentionally concealing and failing to disclose information to
> prospective purchasers; and
>
> Unconscionably limiting warranty coverage for a print-head failure caused by the
> ME41 defect, despite [Defendant]'s knowledge that the ME41 defect would cause
> print heads in MFC machines to fail after the warranty period expired, but before the
> projected useful life of the MFC machines . . . ." <u>Id.</u> (emphasis in original). The
> plaintiffs also alleged, however, that "internal documents reveal that [the defendant]
> has known, since at least 2001, that the ME41 defect was causing premature
> print-head failure in MFC machines." <u>See id.</u> The Court found that such allegations
> were sufficient to plead that the defendant had knowledge.

<u>Id.</u>  Moreover, the plaintiff alleged that "internal documents reveal that [the defendant] has known,

since at least 2001, that the ME41 defect was causing premature print-head failure in MFC

machines." <u>See id.</u>  In view of these allegations, the Court found that the plaintiff's pleadings were

sufficient to withstand a motion to dismiss.

Similarly, in <u>Dewey</u>, discussed <u>supra</u>, the Plaintiff asserted CFA/common law fraud claims.

The Court determined that the pleadings satisfied the Rule 9(b) standard, where the plaintiff alleged

that

> Volkswagen did not fully and truthfully disclose to its customers the true nature of the
> inherent design defects, which were not readily discoverable until years later, often

> after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems . . . .

558 F. Supp. 2d 505, 527-28 (D.N.J. 2008). Although the <u>Dewey</u> Court dismissed Plaintiff's claims based on affirmative misrepresentations, it determined that the plaintiff's omission-based claims could proceed.

This Court finds Plaintiffs' omission-based claims here to be substantially similar to those asserted in <u>Maniscalco</u> and <u>Dewey</u>, and a similar result is appropriate. Accordingly, Plaintiffs' omission-based fraud claims—brought under the NJCFA, California Unfair Competition Law, California's Consumer Legal Remedies Act, Mass. Gen. Laws ch. 93A, §1, *et seq*., the Florida Deceptive and Unfair Trade Practices Act and the Washington Consumer Protection Act, as well as Plaintiffs' claim for common law fraud—will not be dismissed at this time.

The Court again notes that Defendants' motion to dismiss only asked this Court to address whether Plaintiffs' pleadings contained requisite specificity. <u>See</u> Doc. No. 20, at *9. The Court, therefore, has not exhaustively considered whether other grounds for dismissal exist, and expressed no view as to the ultimate merits of Plaintiffs' claims. Defendant's motion to dismiss Plaintiffs' fraud-based claims (Counts I, V, VIII, IX, XII, XIII and XIV) is granted in part and denied in part: Plaintiffs' claims based on affirmative misrepresentations are denied without prejudice and Plaintiffs' claims based on omissions will be permitted to proceed.

**B.    COUNT II (BREACH OF EXPRESS WARRANTY)**

Defendant moves to dismiss Plaintiffs' claims for breach of express warranty. Defendant argues that the claim for breach of an express warranty must be dismissed because each plaintiff's warranty had expired at the time that the alleged defect manifested. Plaintiffs respond that, here, an

-12-

express warranty claim may be maintained because, even if the express warranty expired, the warranty itself was unconscionable. This Court will deny Defendant's motion in this regard.

Express warranties in New Jersey are governed by Article 2 of the state's Uniform Commercial Code. N.J.S.A. 12A:2-101 *et seq*. Section 2-313(1) of the Code recognizes express warranties that arise from, among other things:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Generally warranties limited by time or mileage "do[] not cover repairs made after the applicable time . . . ha[s] elapsed." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3rd Cir. 1995) (citing Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986) (collecting cases)); see Dewey, 558 F.Supp.2d at 519. Some courts, however, recognize an exception where a plaintiff alleges that the warranty in question is unconscionable. In re Samsung DLP TV Class Action Litig., 2009 U.S. Dist. LEXIS 100065, at *14 (D.N.J. Oct. 27, 2009).

Recently, in this District, three Courts have addressed an issue similar to the one before this Court: whether a plaintiff can assert a claim based on breach of an express warranty that is limited by time or mileage, when that time or mileage limitation has expired. One of the Courts dismissed the plaintiffs' express warranty claims, and the other two permitted the plaintiffs' claims to proceed past the motion to dismiss stage. See Samsung, 2009 U.S. Dist. LEXIS 100065 (finding that an action brought outside the express warranty period could survive a motion to dismiss because plaintiff asserted that the warranty was unconscionable); Dewey, 558 F. Supp. 2d 505 (granting defendant can manufacturer's motion to dismiss, agreeing that "Plaintiffs have failed to state a claim

because their alleged injuries occurred outside the express warranty"); Payne v. Fujifilm U.S.A., Inc.,

2007 U.S. Dist. LEXIS 94765 (D.N.J. Dec. 28, 2007) (determining that an action brought outside

the express warranty period could be maintained because plaintiff asserted that the warranty was

unconscionable).[5]

In Samsung, the plaintiffs alleged that "Samsung's limits on their express warranty are

unenforceable as they knowingly sold a defective product without conspicuously informing

consumers about the defect, and, as such, their express warranty was unconscionable." 2009 U.S.

Dist. LEXIS 100065, at 15.  Next they asserted that

> The time limits contained in Samsung's extended written limited warranties were also
> unconscionable and grossly inadequate to protect the plaintiffs and the members of the
> Class. Among other things, plaintiffs and the members of the Class had no meaningful
> choice in determining those time limitations; the terms of the limited warranties
> unreasonably favored Samsung over members of the Class; a gross disparity in
> bargaining power existed as between Samsung and Class members; and Samsung knew
> or should have known that the Televisions were defective at the time of sale and would
> fail well before their useful lives, thereby rendering the time limitations insufficient,
> inadequate, and unconscionable.

Id. at 15-16.  These allegations were sufficient to withstand a motion to dismiss.  Similarly, in Payne,

the plaintiff brought claims for breach of implied/express warranties, among others.  2007 U.S. Dist.

LEXIS 94765.  Although the product, a camera, failed after the limited one-year warranty expired,

_____

[5] The Court in South Jersey Gas Co. v. Mueller Co., also consider the express warranty
jurisprudence in the Third Circuit and noted that "an express warranty does not cover repairs
made after the applicable time . . . has elapsed, and thus concluded that latent defects discovered
after the term of the warranty are not actionable." 2010 U.S. Dist. LEXIS 41407 (D.N.J. Apr. 27,
2010) (internal citations omitted) (citing Duquesne, 66 F.3d at 616 and Abraham, 795 F.2d at
250).  The South Jersey Gas case, however, is distinguishable from Samsung, Dewey and Payne,
because the plaintiffs in the latter three cases all asserted that the warranty was itself
unconscionable or that the defendant was aware of the defect.  Accordingly, the South Jersey Gas
Court did not have to consider whether a departure from the general rule that warranties limited
by time or mileage do not cover repairs made after the applicable time has elapsed was
appropriate.

the plaintiff was permitted to proceed on her express warranty claims because the defendant "had, or should have had, knowledge of the alleged defect at the time of sale to Plaintiff, the time limitations in the express warranty are unconscionable." Id. at 12-13. There, the plaintiff claimed that "she state[d] a claim for breach of express warranty because the [complaint] alleges that the defect affects and manifests in the Camera immediately . . . [,] and the durational limits [of the express warranty] are unconscionable." Id. at 7. The Court permitted plaintiff to proceed

In contrast to the Samsung and Payne Courts, the Court in Dewey rejected the plaintiffs' arguments that "a defect is actionable if it was known to defendants during the warranty period, but was by fraud or concealment, made undiscoverable to plaintiffs." 558 F. Supp. 2d 505. The Dewey Court, quoting the Second Circuit in Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 249-51 (2d Cir. 1986), emphasized that

> virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.

Dewey, 558 F. Supp. 2d at 519 (quoting Abraham, 795 F.2d at 250). The Dewey Court, relying on Abraham as well as the Third Circuits decision in Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995)—which itself extensively relied upon Abraham—determined that the plaintiffs' claims based on defects that manifested themselves post-warranty-period must be dismissed.

This Court agrees with the Dewey Court that a manufacturer's mere knowledge that a part will ultimately fail, after the expiration of a warranty period, is insufficient to provide a basis for a breach of express warranty claim. Moreover, such knowledge does not alone make the time/mileage limitation unconscionable. Here, however, Plaintiffs' allege additional claims in support of their unconscionability claims.[6] Whether Plaintiffs can demonstrate that the express warranty was unconscionable remains to be seen, however, this Court will not dismiss Plaintiffs' breach of express warranty claims at this early stage. See Cooper, 2008 U.S. Dist. LEXIS 75810 ("[M]uch of the information required to decide the issue of unconscionability is either not properly before the court" and is an issue "more suitable for decision at summary judgment."); In re Ford Motor Co. Ignition Switch Products Liability Litig., 1999 U.S. Dist. LEXIS 22892, at *12 (D.N.J. May 14, 1999) ("[The court is] unable at this juncture to determine, as a matter of law, whether or not Ford's durational limitation of the implied warranty of merchantability that accompanied plaintiff's Ford vehicles at the time of their original retail sale was unconscionable.") (vacated in part on other grounds).

This Court will, accordingly, deny Defendant's motion to dismiss breach of express warranty claims.[7]

---

[6] For example, Plaintiffs assert that "members of the Class had no meaningful choice in determining those time limitations" and "a gross disparity in bargaining power existed as between Samsung and Class members." These allegations are sufficient to permit the claims to go forward at this time.

[7] Defendant, in its reply, asserts that certain Plaintiffs (e.g., Mr. Morby and Mr. Leets) "purchased their vehicles used **after** the express warranty provided by Volvo had expired, and thus did not receive **any** warranty from Volvo. Plaintiffs do not explain how these Plaintiffs have standing to allege that a warranty to which they were never parties or beneficiaries was unconscionable" See Doc. No. 23, at 5 (emphasis in original). Defendants did not raise the argument in their initial moving brief, however, and the Court will not consider this argument here.

C.     COUNT III  (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

Defendant moves to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.

Implied warranties in New Jersey are governed by Section 2-314 of the Uniform Commercial Code.  See N.J. STAT. ANN. § 12A:2-314; In re Ford Motor Co. E-350 Van Prods. Liab. Litig., 2008 U.S. Dist. LEXIS 73690, at *59 (D.N.J. 2008).  The implied warranty of merchantability ensures that a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used. Id. (citing N.J.S.A. § 12A:2-314).  As "cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable."  Carlson v. General Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989), cert. denied, 495 U.S. 904, 910 (1990) (citations and quotation marks omitted).

Here, Plaintiffs allege that "the class vehicles are not fit for the ordinary purpose of driving because these vehicles are predisposed to slippage, hesitation, harshness, premature clutch wear, transmission fluid contamination by axle fluid, differential fluid, and/or engine coolant, internal metal debris, and overheating ultimately resulting in very serious and expensive damage to, and/or catastrophic failure of the transmissions."  Doc. No. 22, at 18.  These deficiencies, "may cause the vehicles to enter an emergency 'Limp Mode' and/or sudden and unexpected transmission failure whereby the vehicles will not accelerate and/or move under their own power."  Id.  Plaintiffs' allegations are sufficient to survive this motion to dismiss.

In Hornberger v. GMC another district court in this Circuit addressed an issue similar to the one before this Court.  929 F. Supp. 884, 888 (E.D. Pa. 1996).  The question there was whether "an

-17-

implied  warranty of merchantability claim may extend beyond the limits of an express warranty to

the time when a latent defect arises in an automobile." Id.  Specifically, whether the plaintiff could

bring a claims for breach of the implied warranty of merchantability where their transmission failed

"at approximately 40,000 miles and almost three years after Plaintiffs leased the vehicle." Id.  The

Court determined that "a material question of fact does exist as to whether a normal transmission

of a newly leased vehicle would fail after being driven approximately 40,000 miles, rendering the

car unfit for the purpose of driving and, therefore, unmerchantable." Id.  In so holding, however, the

Hornberger Court observed that "Plaintiffs will have a very difficult path to hoe to establish their

claim for breach of an implied warranty of merchantability. . . . However, this Court cannot hold as

a matter of law that Plaintiffs' claim should be dismissed."  Id. (internal citations omitted).  For the

same reason, this Court find that Plaintiffs' allegations are sufficient to withstand this motion to

dismiss.[8]

Notwithstanding this decision, however, the Court is mindful that  "[d]efects can, and do,

arise with complex instrumentalities such as automobiles." Thiedemann v. Mercedes-Benz USA,

LLC, 872 A.2d 783, 794 (N.J. 2005).  Accordingly if,  for instance, it is later demonstrated that the

transmission in the class product here meets or exceeds the average quality of similar goods in the

industry, implied warranty of merchantability claims will be dismissed.  See Sheris v. Nissan North

---

[8] See Ford Motor Co. E-350 Van Prods., 2008 U.S. Dist. LEXIS 73690, at *59 ("As noted
above, Plaintiffs alleged that the durational limitations on the implied warranty of
merchantability that accompanied Plaintiffs' E350s are 'unreasonable and unconscionable and,
accordingly, [are] unenforceable'[; however b]ased on UCC § 2-302(b), this Court cannot make
this determination at the motion to dismiss stage); Ford Motor Co. Ignition Switch, 1999 U.S.
Dist. LEXIS 22892, at *12 ("[The court is] unable at this juncture to determine, as a matter of
law, whether or not Ford's durational limitation of the implied warranty of merchantability that
accompanied plaintiff's Ford vehicles at the time of their original retail sale was
unconscionable.") (vacated in part on other grounds).

America, Inc., 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) "Merchantability does

not mean that "the goods are exactly as the buyer expected, but rather that the goods satisfy a

minimum level of quality."); Federal Signal Corp. v. Safety Factors, Inc., 886 P.2d 172,180 (Wash.

1994) ("A product which conforms to the quality of other brands in the market will normally be

merchantable."); see also WHITE AND SUMMERS UNIFORM COMMERCIAL CODE § 9-13.

Defendant's motion to dismiss Plaintiffs' claims based on a breach of the implied warranty

of merchantability is denied.

### D.   COUNT IV (UNJUST ENRICHMENT)

Defendant moves to dismiss Plaintiffs' unjust enrichment claim.  Defendant argues that

Plaintiffs did not have a direct relationship with Volvo—i.e., that the transactions were only between

the Plaintiffs and the dealers—and, therefore, that the unjust enrichment claims cannot proceed.  The

Court, relying on two substantially similar cases from this District, agrees with Defendant.

In Alin v. Am. Honda Motor Co., the plaintiff leased a 2006 Honda Odyssey from an

authorized Honda dealer in Denville, New Jersey.  2010 U.S. Dist. LEXIS 32584, at 2 (D.N.J. Mar.

31, 2010).  The plaintiff alleged that the car was defective, and as a result, that Honda was unjustly

enriched by entering into the lease.  The Court explained:

> [u]nder New Jersey law, to state a claim for unjust enrichment, a plaintiff must allege
> that: (1) a defendant received a benefit from the plaintiff; (2) retention of the benefit
> by the defendant without payment would be unjust; (3) plaintiff expected
> remuneration from defendant at the time he performed or conferred a benefit on
> defendant; and (4) the failure of remuneration enriched the defendant beyond its
> contractual rights.  See VRG Corp. v. GKN Realty Co., 135 N.J. 539, 554, 641 A.2d
> 519 (1994).  **An unjust enrichment claim also requires a "direct relationship"**
> **between the parties or a mistake on the part of the party conferring the benefit**.
> Premier Pork LLC v. Westin, Inc., 2008 U.S. Dist. LEXIS 20532, at *14-15 (D.N.J.
> Mar. 17, 2008) (Rodriguez, J.).

-19-

Id. at 39-40 (emphasis added); see also Cooper v. Samsung Electronics America, Inc., 2008 U.S. Dist. LEXIS 75810, at *10 (D.N.J. Sept. 30, 2008) (finding that because plaintiff alleged that his purchase was through a retailer, "there was no relationship conferring any direct benefit on Samsung [the manufacturer] through [plaintiff's] purchase."); Maniscalco, 627 F.Supp. 2d at 506 (requiring the plaintiff "to allege a relationship between the parties to support [a claim for] unjust enrichment"). Here, as in Alin and Cooper, there was no "direct relationship" between Plaintiffs and the manufacturer (Volvo), and Plaintiffs' unjust enrichment claims must fail.

Defendant's motion to dismiss Plaintiffs' claims based on unjust enrichment is, accordingly, granted.

### E.    COUNT VI (NEGLIGENT MISREPRESENTATION)

Defendant moves to dismiss Plaintiffs' negligent misrepresentation claim.  This Court will grant this motion.[9]

Under New Jersey law, a claim for negligent misrepresentation requires a plaintiff to establish that defendant made an incorrect statement, upon which he or she justifiably relied, causing economic loss.  See McClellan v. Feit, 376 N.J. Super. 305, 317, 870 A.2d 644 (App. Div. 2005) (citing H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138 (1983)).  A negligent misrepresentation claim may also be based on an omission.  See South Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 397 (D.N.J. 2007).  A plaintiff may not bring an omission-based claim "unless the breaching party owes [him or her] an independent duty imposed by law" requiring disclose. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 315, 788 A.2d 268 (2002).  In New

---

[9] The dismissal will be without prejudice as with Plaintiffs' fraud claims based on affirmative misrepresentations.  See III.A.1, supra.

Jersey, such a duty to disclose arises:  (1) when there is a fiduciary relationship between the parties; (2) when the transaction is intrinsically fiduciary, and calls for food faith and full disclosure; and (3) and when one party expressly places a special trust or confidence in the other.  Id.

First, with respect to Plaintiffs' negligent misrepresentation claim based on affirmative misrepresentations, the claim is dismissed without prejudice for the reasons stated above with respect to Plaintiffs' fraud claims based on affirmative misrepresentations.  See III.A.1, supra.  As to Plaintiffs' claim premised upon omissions, the requisite duty does not exist, and Plaintiffs' negligent misrepresentation claim must fail.

In a recent case in this District (decided after briefing was completed on this motion), the court addressed this very issue.  Alin v. Am. Honda Motor Co., 2010 U.S. Dist. LEXIS 32584, at * (D.N.J., March 31, 2010).  The Alin Court found that the plaintiff's claim "that Honda failed to disclose a defect during the sale, lease, or servicing of the Class Vehicles is insufficient to state a claim for negligent misrepresentation by omission." Id. 38.  Specifically, it noted that, like here, the parties were not "in a fiduciary or intrinsically fiduciary relationship" nor did the plaintiff "repose[] a special trust in Honda when he entered into his lease." Id.  Accordingly, the negligent misrepresentation claims based on omissions were dismissed. Id. (citing McClellan, 376 N.J. Super. at 317).

The New Jersey Appellate Division arrived at a similar decision in Green v. GMC, 2007 N.J. Super. Unpub. LEXIS 861, 2003 WL 21730592 (N.J. Super. Ct. App. Div. July 10, 2003).  There, plaintiff  car owners brought claims against GMC for an alleged design defect related to the front seats, which impacted the effectiveness of the seat belts.  The Appellate Division affirmed trial court's dismissal of the negligent misrepresentation claim.  The Court noted that there was no

affirmative duty on GMC, the car manufacturer, to disclose information regarding the seat design. 2007 N.J. Super. Unpub. LEXIS 861, at *8.  The Court explained:  "no fiduciary or implied fiduciary relationship existed between plaintiffs and the manufacturers of their cars, and since neither defendants nor the dealers from whom plaintiffs purchased their cars did anything to encourage plaintiffs to repose special trust or confidence in their advice," the claims were dismissed.  Id. Accordingly, the claims were dismissed.

Plaintiffs' negligent misrepresentation claims based upon Defendant's alleged affirmative misrepresentation are denied without prejudice, and Plaintiffs' claim based upon Defendant's alleged omissions are denied with prejudice.

### F.     COUNT VII  (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING)

Defendant moves to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.  The Court will not do so at this time.

"[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." Pickett v. Lloyd's & Peerless Ins. Agency, Inc., 131 N.J. 457, 621 A.2d 445, 450 (N.J. 1993).  The purpose of the implied covenant is to ensure that "neither party to a contract shall injure the right of the other to receive the fruits of the agreement." Onderdonk v. The Presbyterian Homes of N.J., 85 N.J. 171, 425 A.2d 1057, 1062 (N.J. 1981).

As discussed above, see Section II.B, the plaintiff in Payne brought claims analogous to those asserted by Plaintiffs here—namely claims for fraud, express/implied warranty and a claim for breach of the implied covenant and fair dealing.  2007 U.S. Dist. LEXIS 94765, at *33-36.  The Payne plaintiff's implied covenant of good faith and fair dealing claims were premised upon her allegations that:  "FUJIFILM breached those implied covenants by selling Plaintiff and Class

-22-

members digital cameras that were inherently defective in bad faith with knowledge that the contract and/or warranties were unconscionable," and "FUJIFILM also breached th[]e implied covenants by not providing terms in the contract and/or warranty that conspicuously stated to the Plaintiff and Class Members that the internal battery would fail." Id. at 35-36. Based on these allegations, the Court permitted the plaintiff to proceed on its claim for breach of the implied covenant and fair dealing.

Similarly, here, where warranty unconscionability has been alleged, see id. at 13-14, 35-36, the Court will not dismiss Plaintiffs' claim for breach of the implied covenant and fair dealing at the motion to dismiss stage.

### G. COUNTS X-XI (BREACH OF EXPRESS AND IMPLIED WARRANTIES UNDER CALIFORNIA'S SONG-BEVERLY ACT)

Defendant moves to dismiss the (1) implied and (2) express warranty claims brought pursuant to California's Song-Beverly Act (brought by Plaintiff Morris, a California Plaintiff).

#### 1. Breach of Implied Warranty Claims under Song-Beverly

First, with respect to the implied warranty claims brought pursuant to California's Song-Beverly Act, Defendant argues that the warranty period expired, and any warranty is therefore unenforceable.

As Section 1791.1 of the Song-Beverly act explains, "[t]he duration of the implied warranty of merchantability … shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days **nor more than one year following the sale of new consumer goods** to a retail buyer." (emphasis added).  Accordingly, here, where the

alleged defect manifested itself well after the one-year period, the Song-Beverly implied warranty claim must be dismissed.[10]

### 2.   Breach of Express Warranty Claims under Song-Beverly

Second, Defendant argues that the express warranty claims brought pursuant to California's Song-Beverly Act should be dismissed.

Under Song-Beverly Act, a plaintiff bringing "a claim for breach of express warranty must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty that proximately caused plaintiff's injury." Kearney v. Hyundai Motor Co., 2010 U.S. Dist. LEXIS 68242 (C.D. Cal., June 10, 2010) (citing Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142, 229 Cal. Rptr. 605 (1986).  Here, Plaintiffs' have alleged no breach, and therefore the Song-Beverly express warranty claim must be denied.  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, (9th Cir. Cal. 2008) ("California has adopted a doctrine from the Second Circuit . . . [adopting t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed.") (citing Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 830, 51 Cal. Rptr. 3d 118 (2006) and Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)).

The Court notes that Plaintiffs' express warranty claims were tentatively permitted  to proceed, despite the fact that Plaintiffs' did not allege a breach of warranty within the mileage period.  See Section III.B, supra.  With respect to those claims, the Court found that it is conceivable that Plaintiffs' claims may fall with a narrow exception to the general rule espoused in

---

[10] Even if Plaintiffs established a claim for warranty unconscionability, the statute expressly prohibits Courts from implying a warranty over a year in length.

<u>Abraham</u>—namely, that the limited warranty was unconscionable.  <u>See id.</u>  Under Song-Beverly, however, no such exception exists.  In <u>Wilson v. Hewlett-Packard Co.</u>, 2009 U.S. Dist. LEXIS 92692 (N.D. Cal. Sept. 17, 2009), the plaintiff asserted claims for breach of warranty notwithstanding the fact that the product (a laptop) failed after the two-year express warranty period expired.  The Court dismissed the plaintiff's claims, noting that "Plaintiff's argument that the limitation of the warranty is unconscionable is not convincing. A two-year consumer product warranty is unremarkable and no facts suggests that it is unconscionable . . . [and such warranties] have been routinely upheld." <u>Id.</u> at *4.  Similarly, in <u>Brothers v. Hewlett-Packard Co.</u>, 2006 U.S. Dist. LEXIS 82027, at *25-26 (N.D. Cal. Oct. 31, 2006) the Court rejected Plaintiffs' argument that the time limitations of the warranty were unconscionable.  It explained that

> plaintiff argues that plaintiff and the class do not have any meaningful choice in the time limitations in the warranty, the express terms favor HP, and HP knew that the Pavilions were defective and would fail well before their useful lives. Even accepting each of plaintiff's contentions as true, plaintiff has failed to show how the warranty terms here are unconscionable. In particular, a time limitation, by itself, is not unconscionable.

<u>Id.</u>  at 26; <u>see also</u> <u>Jensen v. BMW of North America, Inc.</u>, 35 Cal. App. 4th 112, 127, 41 Cal. Rptr. 2d 295 (1995) ("[M]anufacturers are free to change the terms of express warranties they offer.  The [Magnuson-Moss Warranty] Act merely reflects the Legislature's intent to make car manufacturers live up to their express warranties, whatever the duration of coverage.).

The Court will deny Defendant's motion in light of the discussion in Section III.B, <u>supra</u> (permitting Plaintiffs' claims for breach of express warranty to proceed).

## IV.  **CONCLUSION**

Defendant's motion to dismiss Plaintiffs' Amended Complaint is **granted in part** and **denied in part**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:          July   21   , 2010
Original:      Clerk's Office
cc:            All Counsel of Record
               Hon. Joseph A. Dickson, U.S.M.J.
               File