IN THE UNITED STATES DISTRICT COURT
FOR THE FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| LYNN HENDERSON, KRISTINA KULON, B. DAVID MORBY, JASON ROBINSON, KEVIN MORRIS, and JOHN LEET, individually and on behalf of others similarly situated, | No. 2:09-cv-04146-CCC-JAD |
| Plaintiffs, | |
| vs. | |
| VOLVO CARS OF NORTH AMERICA, LLC, and VOLVO CAR CORPORATION, | |
| Defendants. | |

DECLARATION OF JOSEPH G. SAUDER IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR
AN AWARD OF ATTORNEYS' FEES, THE
REIMBURSEMENT OF EXPENSES, AND APPROVAL
OF INCENTIVE AWARD PAYMENT TO THE PLAINTIFFS

I, Joseph G. Sauder, declare as follows:

1.      I am a partner at the law firm of Chimicles & Tikellis LLP.  I am admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and before a number of federal courts.  I submit this declaration in support of Plaintiff's Unopposed Motion for an Award of Attorneys' Fees, the Reimbursement of Expenses, and Approval of the Incentive Award Payments to the Plaintiffs.  I have personal knowledge of the matters discussed herein, and if called as a witness could testify competently thereto.

2.      On June 22, 2012, the Court issued an Order preliminary approving the Settlement Agreement.  *See* Docket Entry No. 72.

3.     My law firm was retained to work on this matter on a contingency fee basis, and has not received any compensation for the services rendered in this case.  That work began since before the inception of this case on August 13, 2009.  The resume of my law firm is attached as Exhibit A to this Declaration.

4.     During the course of this litigation, my law firm has been involved in the following types of activities:

- Performed factual and legal investigation of Plaintiffs' claims.

- Prepared and drafted the Complaint and the Amended Complaint.

- Participated in motion practice, including the drafting of Plaintiffs' Memorandum of Law in Opposition to Volvo's Motion to Dismiss. Judge Cavanaugh denied, in large part, Volvo's Motion to Dismiss on July 21, 2010.  *See* Docket Entry No. 26.

- Appeared for and participated in court conferences and meetings.

- Consulted with expert witnesses.

- Reviewed and analyzed thousands of pages of documents produced by Volvo, and by third parties.

- Interviewed Plaintiffs and numerous putative class members that have contacted our firm.

- Took and defended numerous depositions.

- Participated in multiple mediation sessions before the John R. Phillips, an experienced neutral mediator from the firm Husch

Blackwell.  The parties ultimately engaged in four days of in-person mediation sessions in New York City and St. Louis over the course of three months.

- Prepared and edited – along with defense counsel – the motion, memorandum of law, claim forms and notice materials, and other related materials in support of Plaintiffs' motion seeking preliminary approval of the Settlement.

- Assisted in implementing the Notice Plan in the Settlement Agreement.

- Communicated regularly with counsel for Volvo concerning the implementation of and response to the Settlement.

- Reviewed and analyzed publically available information relevant to the allegations contained in the Complaint and this case.

- Monitored (and will continue to monitor) the Claims Administrator to assure that the Notice Plan and claims administration process are being implemented properly.

5.     From the inception of this case through July 31, 2012, my firm performed a total of 3,443.75 billable hours on this case.  Based upon hourly rates currently charged to my firm's clients, the total lodestar value of this billable time is $1,783,572.50.  Attached to this declaration as Exhibit B is a chart which indicates the attorneys and paralegals who worked on this litigation, the number of hours billed by each, and their respective billable

rates. This schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

6.     All of the time billed to this case by my firm was reasonable and necessary in the prosecution of this case.

7.     As detailed in Exhibit C, my firm has incurred a total of $69,971.59 in unreimbursed expenses in connection with the prosecution of this litigation.  These expenses were also reasonable and necessary in the prosecution of this case.

8.     The expenses incurred in this action are reflected on my firm's the books and records. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 31, 2012

By: _____
        Joseph G. Sauder

# EXHIBIT A

# Chimicles & Tikellis LLP

## Attorneys at Law

# Firm Resume

<u>HAVERFORD, PA</u>
361 West Lancaster Avenue
Haverford, PA 19041
Voice: 610-642-8500
Toll Free: 866-399-2487
Fax: 610-649-3633

<u>WILMINGTON, DE</u>
P.O. Box 1035
222 Delaware Avenue
Suite 1100
Wilmington, DE 19899
Voice: 302-656-2500
Fax: 302-656-9053

# Contents

OUR ATTORNEYS

    Partners

        Nicholas E. Chimicles        3
        Pamela S. Tikellis        8
        Robert J. Kriner, Jr.        12
        Steven A. Schwartz        15
        Kimberly Donaldson Smith        18
        Joseph G. Sauder        21
        Timothy N. Mathews        23
        A. Zachary Naylor        25

    Of Counsel

        Anthony Allen Geyelin        27
        David M. Maser        28

    Associates

        Tiffany J. Cramer        29
        Vera V. Gerrity        29
        Alison G. Gushue        30
        Benjamin F. Johns        31
        Christina Donato Saler        33
        Matthew D. Schelkopf        34
        Scott M. Tucker        35

PRACTICE AREAS        36

REPRESENTATIVE CASES        39

# Our Attorneys-Partners



# Nicholas E. Chimicles

is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors. Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments. While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law. Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in several matters.

Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud, breach of fiduciary duty and consumer suits.

Notably, Mr. Chimicles successfully presented for final approval the settlement of a massive consumer litigation involving false advertising and other claims relating to the Honda Civic Hybrid ("HCH") (*Lockabey v. American Honda Motors*, Case No. 37-2010-00087755-CU-BT-CTL), resolving claims with respect to AHM's advertising of fuel efficiency of Model Year 2003-09 HCHs as well as claims arising from a mandatory software modification made by AHM in mid-2010 that adjusted, to the detriment of fuel efficiency, the operation of the integrated motor assist (hybrid) battery. Nearly 500,000 class members are covered by the settlement and the Superior Court of San Diego County estimated the settlement provided more than $170 million in benefits for the Class. The settlement received final approval in a more than 40 page opinion dated March 16, 2012.

The trial of securities class actions is rare and achieving a plaintiff's verdict in such cases is even rarer. Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury returned a unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a),

*Nicholas E. Chimicles cont.*

1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10 Verdicts of 2002," as reported by the National Law Journal (verdictsearch.com). The Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in pre-judgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, $91 million on Count II and $30 million on Count I.

In 2010, Mr. Chimicles, as principal litigation counsel, negotiated a settlement of a class action challenging the accuracy of a proxy statement that sought (and received) stockholder approval of the merger of an external advisor and property managers by a multi-billion dollar real estate investment trust, Inland Western Retail Real Estate Trust, Inc. (*City of St. Clair Shores General Employees Retirement System, et al. v. Inland Western Retail Real Estate Trust, Inc.*, Case No. 07 C 6174 (N.D. Ill.). The settlement received final federal court approval in November 2010 and provided that the owners of the advisor/property manager entities (who are also officers and/or directors of Inland Western) had to return nearly 25% of the Inland Western stock they received in the merger, such stock having been valued at $90 million at the time of the merger.

In 2006, Mr. Chimicles, as lead counsel, negotiated the settlement of the *CNL Hotels & Resorts, Inc. Securities Litigation*, Case No. 6:04-cv-1231 (M.D. Fla., Orl. Div). The case settled Sections 11 and 12 claims for $35 million in cash and Section 14 proxy claims by significantly reducing the merger consideration by more than $225 million (from $300 million to $73 million) that <u>CNL</u> paid for internalizing its advisor/manager.

In other federal securities fraud action, he served as a lead counsel in the *Hercules Securities Litigation*, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); *Scott Paper Securities Litigation*, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); *Sunrise Savings & Loan Securities Litigation*, MDL No. 655 (E.D. Pa.) ($15 million recovery); *Storage Technology Corp. Securities Litigation*, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); *In re Fiddler's Woods Bondholders Litigation*, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial development bond issue (recovery of more than $7 million for the Class); and *Charter Securities Litigation*, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million); *Continental Illinois Corporation Securities Litigation*, Civil Action No. 82 C 4712 (N.D. Ill.) involving a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the Class ultimately recovered nearly $40 million).

## Our Attorneys-Partners

Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for classes of limited partners.  In addition to the *Real Estate Associates Limited Partnership Litigation*, discussed above, Mr. Chimicles was a member of the Executive Committee in the *Prudential Limited Partnerships Litigation*, MDL 1005 (S.D.N.Y.), where the Class recovered $130 million in settlement from Prudential, and other defendants.  Mr. Chimicles was lead counsel in the *PaineWebber Limited Partnerships Litigation*, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997.  As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Delaware Federal District Court.  Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds.  In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provided both monetary and equitable relief for the limited partners. In February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates and resulting in entry of a judgment in the amount of $21 million. (*In Re Phoenix Leasing Incorporated Limited Partnership Litigation*, Superior Court of the State of California, County of Marin, Case No. 173739).

Mr. Chimicles has represented limited partners who successfully have sought the liquidation of assets or the reorganization of the partnership. For example, in *In re the Mendik Real Estate Limited Partnership*, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. Additionally, as co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement of a suit filed against the general partners of Aetna Real Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (*Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation*, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in suits arising from proposed mergers, acquisitions and hostile takeovers.  For example, in *Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, et al.*, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a lead counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed

## Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

spin-off of Burger King. Additionally, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in takeovers or going private transactions. *Randee L. Shantzer, et al. v. Charter Medical Corp., et al.*, Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; *In re Interstate Bakeries Corporation Shareholders Litigation*, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a lead and co-lead counsel in numerous class suits. He was co-lead counsel in the *Travel Agency Commission Antitrust Litigation*, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also co-lead counsel in the *Insurance Antitrust Litigation*, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. *In re Insurance Antitrust Litigation*, 938 F.2d 919 (9th Cir. 1991); *aff'd sub nom. Hartford Fire Insurance Co. v. California*, 113 S.Ct. 2891 (1993).

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings. In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *rev'd in part on rehearing*, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, *In re the Charter Company*, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was lead counsel in the *Philadelphia Electric Company Securities Litigation*, Master File No. 85-1878 (E.D. Pa.) and a lead counsel in the *Consumers Power Company Derivative Litigation*, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. *In re Philadelphia Electric Company Derivative Litigation*, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a co-lead counsel in a major environmental litigation, *Ashland Oil Spill Litigation*, Master File M-14670 (W.D. Pa.), involving the claims of

## Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm was involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as special counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. *City of Philadelphia, et al. v. Lead Industries Ass'n, et al.*, Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. Mr. Chimicles was appointed in 2011 to a second 3-year term as a Hearing Committee Member of the Disciplinary Board of the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, and the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, the Institute for Law and Economic Policy and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles has previously served as a member of the Board of Overseers of the School of Arts and Sciences of the University of Pennsylvania. He is the past President of the National Association of Securities and Commercial Law Attorneys.

Mr. Chimicles serves on the boards of directors of numerous non-profit organizations including the Public Interest Law Committee of Philadelphia; the Shriver Center on Poverty Law (Chicago); the Opera Company of Philadelphia; Pennsylvanians for Modern Courts; and the American Hellenic Institute (Washington, D.C.). Mr. Chimicles was awarded the Ellis Island Medal of Honor in 2004, in recognition of his professional achievements and charitable work.

# Our Attorneys-Partners



# Pamela S. Tikellis

is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis was born in Lawrence, Kansas and is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts, and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as liaison counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as lead counsel in *Home Shopping Network Shareholders and Securities Litigation*, (C.A. No. 93-406; Court of Chancery, Cons. C.A. No. 12868; Delaware District Court C.A. No. 93-336 (MMS)) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as lead counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of 0 proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (*In re Cyprus Amax Shareholders Litigation*, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of lead counsel representing a Class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (*First Interstate Bancorp Shareholders Litigation*, Cons. C.A. No. 14623). Most recently, in the merger amd acquisition arena, Ms. Tikellis serves as Co-Lead Counsel in the class action challenging the $21 billion management-led buyout of Kinder Morgan, Inc. *In re Kinder*

## Our Attorneys-Partners

*Morgan, Inc. Shareholders Litigation*, Consol. C.A. No. 06-C-801 (Kan.). Additionally, she is serving as Lead Counsel in the class action challenging Roche Holding's buyout of Genentech, Inc. *In re Genentech, Inc. Shareholders Litigation*, Civil Action No. 3911-VCS. The litigation was settled shortly after the Court of Chancery held a hearing on Plaintiffs' motion for a preliminary injunction and prior to the closing of the transaction. The settlement provides for, among other things, the additional $4 Billion in consideration paid to the minority shareholders in the transaction.

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and their stockholders. *Sanders v. Wang*, DE Court of Chancery C.A. No. 16640, was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001). Ms. Tikellis serves as Co-Lead Counsel representing Montgomery County Employee's Retirement Fund in a suit filed derivatively on behalf of Citigroup Inc. in the Court of Chancery in the State of Delaware, for wrongdoing stemming from Citigroup's financial and business exposure to subprime loans and subprime mortgage crisis. The litigation is in an early stage. *In re Citigroup Inc. Shareholder Derivative Litigation*, Civil Action No. 3338-CC. Currently, Ms. Tikellis also serves as Lead Counsel in the Court of Chancery derivative litigation arising out of the merger of Bank of America and Merrill Lynch. *In re Bank of America Corporation Stockholder Derivative Litigation*, Civil Action No. 4307-VCS

In the limited partnership arena, Ms. Tikellis along with partner Nicholas Chimicles has actively and successfully prosecuted several cases including *ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund* (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with partner Nicholas Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (*Aetna Real Estate Associates, L.P.*, Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the years of 2002 and 2003, Ms. Tikellis argued successfully three appeals in the

Our Attorneys-Partners

*Pamela S. Tikellis cont.*

Delaware Supreme Court. She argued en banc to the Delaware Supreme Court in *Saito v. McKesson Corporation*, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court of Chancery permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by the Plaintiff. Importantly, the documents ultimately received in the books and records Saito case resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlement provides for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

In a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. *Krasner v. Moffett*, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994 and is currently Chairman. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practising Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics. She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights. Ms. Tikellis was a member of the faculty of the 7th Annual Colorado Business Law Institute that was held in Vail, Colorado on August 10-12, 2006. She participated on a panel featuring the Honorable Phillip S. Figa of the United States District Court for the District of Colorado and the Honorable Leland P. Anderson of the Colorado State District Court addressing the topic of

## *Our Attorneys-Partners*

*Pamela S. Tikellis cont.*

fiduciary duties. In October 2007 and 2008, Ms. Tikellis, at the request of Chancellor William B. Chandler III of the Court of Chancery of the State of Delaware, participated as guest lecturer in the Chancellor's course on derivative litigation at Vanderbilt University Law School. Ms. Tikellis recently participated in the May 2009 Practising Law Institute Program: What all Business Lawyers must know about Delaware Law Developments 2009 and the Practising Law Institute's 41st Annual Institute on Securities Regulation in November 2009 speaking on Developments in Delaware Corporate Law.

In 2007, 2008, 2009 and 2012 Law & Politics named Ms. Tikellis a Delaware Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Delaware, as chosen by their peers and through the independent research of Law & Politics.

## Our Attorneys-Partners



# Robert J. Kriner, Jr.

is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of *The Delaware Journal of Corporate Law.* From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner's practice focuses primarily on business litigation on behalf of investors. Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Mr. Kriner prosecuted the *Home Shopping Network, McKesson* and *Moffett* matters along with Partner Pamela Tikellis. In addition, Mr. Kriner represented holders of Series B stock of Litton Industries in *Myers and Koehler v. Litton Industries, Inc., et al.,* C.A. No. 18947-NC in connection with the short form merger cash out of the Series B stock in 2001. The short form merger price was $35 per share. Mr. Kriner negotiated a settlement of the claims which provided an additional $1.84 per share to the Series B holders.

Mr. Kriner also was on the trial team in *Gelfman, et al. v. Weeden Investors, L.P., et al.,* C.A. No. 18519-NC, which was tried in the Delaware Court of Chancery and resulted in a judgment in favor of the limited partners represented by Mr. Kriner. In *Weeden,* the limited partners represented by Mr. Kriner asserted that dilution and a cash out of their interests at a book value of $4.20 per Unit was unfair and in violation of the Partnership Agreement and the General Partner's fiduciary duties. After trial, the Court agreed, concluding the value of the interests was $20.92 per Unit, 4.98 times that paid on the cash out plan, and awarded damages to the limited partners.

Mr. Kriner represented the public limited partners in *I.G. Holdings, Inc., et al. v. Hallwood Realty LLC, et al.,* C.A. No. 20283-NC, in an action challenging the defensive response of the General Partner of Hallwood Partners LP to a premium tender offer by an affiliate of Carl Icahn in 2003. Mr. Kriner led the litigation on behalf of

## Our Attorneys-Partners

*Robert J. Kriner, Jr. cont.*

the public limited partners through expedited injunction proceedings and an expedited trial which led to the General Partner's agreement to auction and sell the Partnership. The sale of the Partnership resulted in a per unit price of $136.70 to the limited partners, as compared to the trading range for the Units of $60 - $80 prior to the litigation.

Recently, Mr. Kriner was one of the co-lead counsel in actions brought on behalf of the public stockholders of Chiron Corporation challenging the buyout of Chiron by its 42% parent, Novartis AG. Novartis initially proposed a buyout at $40 per share and thereafter entered into a merger agreement to acquire Chiron for $45 per share. Mr. Kriner and his co-counsel moved preliminarily to enjoin the merger pending a proper process to maximize value and full disclosure to the stockholders. After completion of briefing on the injunction motion, an agreement in principle was reached for a settlement of this litigation which includes, among other things, an increase in the merger price to $48 per share, or an aggregate increase of over $330 million for the public stockholders.

Mr. Kriner was plaintiff's counsel in an action on behalf of the public unit holders of Northern Border Partners, L.P and on behalf of that Partnership, alleging breaches of the partnership agreement and breaches of fiduciary duties against the general partners of the Partnership and certain affiliates.  The claims arose in connection with a transaction in which, among other things, the Partnership acquired assets of ONEOK, Inc., the indirect majority owner of the general partners.  The Partnership paid cash and newly created "Class B" Units for the assets.  The Class B Units included provisions that would provide premium distributions to ONEOK in the event the public unit holders did not vote to grant ONEOK certain rights.  Pursuant to an agreement to settle the claims, the economic terms of the Class B Units were substantially reduced to the Partnership's and Class' benefit.  The Settlement also secured provisions requiring approval of the nonaffiliated unit holders of any amendments to the independence provisions of the Audit and Conflict Committees.

Mr. Kriner represented a Delaware corporation and its public shareholders in a class and derivative action alleging, among other things, that members of the board of directors of Randall Bearings, Inc. breached their fiduciary duties to the company and its stockholders and committed corporate waste in connection with an executive stock incentive plan which transferred approximately 30% of the company's outstanding stock (200,000 shares) to 3 executive directors for a total cost of $200.  In an opinion dated January 23, 2007, the Delaware Court of Chancery upheld all claims against the directors. *Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007).  In a subsequent opinion, the Court denied a motion to dismiss claims against company's outside lawyer and his law firm.  *Sample v. Morgan*, 2007 Del. Ch. LEXIS 166 (Nov. 27, 2007).  On May 27, 2008, the parties agreed to the terms of a settlement of the claims which included rescission and cancellation of the executive stock incentive plan, return to the company of all 200,000 shares granted to the Defendant executives, $2.45 million in cash plus wide-ranging prospective governance provisions

## Our Attorneys-Partners

*Robert J. Kriner, Jr. cont.*

relating to future stockholder voting and any future executive incentive plans. The settlement was approved by the Court on August 5, 2008.

Mr. Kriner is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

In 2007 and 2008, Law & Politics named Mr. Kriner a Delaware Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Delaware, as chosen by their peers and through the independent research of Law & Politics.

## Our Attorneys-Partners



# Steven A. Schwartz

a Partner in the Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts of Pennsylvania, the Eastern District of Michigan, the United States District Court for the District of Colorado, and the United States Courts of Appeals for the Third, Sixth, Eighth and Ninth Circuits. He graduated from the Duke University School of Law (J.D. 1987), where he served as a senior editor of *Law & Contemporary Problems*. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader Harrison Segal & Lewis LLP, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Notably, Mr. Schwartz has been successful in obtaining several settlements where class members received a full recovery on their alleged damages. For example, Mr. Schwartz was Co-Lead Counsel in *Wong v. T-Mobile*, a case alleging that T-Mobile overcharged its subscribers by billing them for data access services even though T-Mobile's subscribers had already paid a flat rate monthly fee of $5 or $10 to receive unlimited access to those various data services. Mr. Schwartz defeated a motion by T-Mobile to force resolution of these claims via arbitration and successfully convinced the Court to strike down as unconscionable a provision in T-Mobile's subscription contract prohibiting subscribers from bringing class actions. After that victory, the parties reached a settlement requiring T-Mobile to provide class members with a net recovery of the full amount of the un-refunded overcharges with all costs for notice, claims administration, and counsel fees paid in addition to class members' 100 % net recovery. The gross amount of the overcharges, which occurred from April 2003 through June 2006, was approximately $6.7 million. As a result of the lawsuit, T-Mobile also implemented changes to its billing system to prevent such overcharging in the future.

Mr. Schwartz also served as Co-Lead Counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the class members' recovery.

## Our Attorneys-Partners

*Steven A. Schwartz cont.*

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represented various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this was the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In *In Re Coin Fund Litigation,* (Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs Co-Lead Counsel in *In re Veritas Software Corp. Derivative Litigation* (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5-1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' Liaison Counsel in *In Re DVI Securities Litigation*, (E.D. Pa.). To date, Mr. Schwartz has recovered over $ 17 million in settlements in that litigation, including a $ 3.25 million settlement paid from the individual assets (and not from an insurance policy) of members of DVI's audit committee.

In the consumer protection field, Mr. Schwartz served as Chair of Plaintiffs' Discovery Committee in a Multi-District litigation captioned *In re Certainteed Corp. Roofing Shingle Products Liability Litigation,* No, 07-MDL-1817 (E.D. Pa.). That case alleged that CertainTeed marketed and sold organic shingles that were defectively designed and manufactured thereby causing premature and unreasonable deterioration, blistering, crumbling, curling, cracking, pitting, balding, and leaking. After several years of litigation the parties reached a settlement which was approved by the Court in 2010 and valued at between $687 to $815 million. Mr. Schwartz also served as plaintiffs' co-lead counsel in *Wolens, et al. v. American Airlines, Inc.* In that class action, plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer

## Our Attorneys-Partners

miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $ 141.6 million. Mr. Schwartz also represented a national class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %. Mr. Schwartz currently serves in leadership positions in *In re LG Front Load Washing Machine Class Action Litigation* and *In re Whirlpool Corp. Front Loading Washing Machine Class Litigation.*

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/ physical medicine services provided to its insureds. Nationwide agreed to pay class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking interest for overdue bills for treatment provided to insureds of Progressive Insurance Company.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in *In re Pennsylvania Diet Drugs Litigation,* (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination.

For the past several years, Law & Politics and the publishers of Philadelphia Magazine have named Mr. Schwartz a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.

# Our Attorneys-Partners



# Kimberly Donaldson Smith

is a Partner in the Firm's Haverford office. Ms. Donaldson Smith concentrates her practice on the prosecution of securities fraud class action litigation, shareholder derivative actions and breach of fiduciary duty class action lawsuits. She is also a member of the Firm's Client Development Group and works closely with the Firm's institutional clients.

Ms. Donaldson Smith is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science, and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau. Ms. Donaldson Smith is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and various Federal Appellate and District Courts. Ms. Donaldson Smith's pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a Philadelphia-based, nonprofit organization that provides legal and social services to abused and neglected children.

From 2006 through 2012, Law & Politics and the publishers of Philadelphia Magazine included Ms. Donaldson Smith as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in *Rising Stars*.

Ms. Donaldson Smith has been involved in prosecuting several federal securities fraud cases, breach of fiduciary duty suits and corporate derivative actions, including the following:

- *Washtenaw County Employees' Retirement System v. Wells Real Estate Investment Trust, Inc., et. al.*, Case 1:07-cv-00862 (U.S.D.C. N.D. GA). C&T serves as co-lead counsel in this federal securities class action on behalf of Washtenaw County ERS and a class of Wells REIT shareholders. Filed in 2007, this lawsuit charges Wells REIT, certain of its directors and officers, and their affiliates, with violations of the federal securities laws by virtue of their of their devising and soliciting the shareholders' approval of a merger of an affiliate of the company's insiders with Wells for $175 million worth of the Company's stock. The court denied in part defendants' motions to dismiss. The parties have concluded expert and fact discovery, the court certified the action as a Class Action and the Court appointed C&T as co-class counsel. The Court granted in part a motion for summary judgment filed by the Class. Trial is scheduled to start in March 2012.

**Our Attorneys-Partners**

*Kimberly Donaldson Smith  cont.*

- *Washtenaw County Employees' Retirement System v. Piedmont Office Realty Trust, Inc., et al.* Case 1:07-cv-02660 (U.S.D.C. N.D. GA).  C&T serves as co-lead counsel in this federal securities class action on behalf of Washtenaw County ERS and a class of Wells REIT shareholders.  Filed in late-2007, this lawsuit charges Wells REIT, certain of its directors and officers, and their affiliates, with violations of the securities laws by virtue of their recommendation that shareholders reject a mid-2007 tender offer made for the shareholders' stock and their recommendation that shareholders approve a material change to Piedmont's charter that would re-sult in a loss of an important benefit to the shareholders (a timely liquidity event).  The Court denied in part defendants' motions to dismiss and the parties are conducting discovery.

- *CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 04-cv-1231 (M.D. Fla.).  C&T served as lead litigation counsel in this settled action which was filed in 2004 asserting federal securities law claims under the 1933 Securities Act involving a $3.0 Billion real estate investment trust.  The Litigation was settled by: (1) the establishment of a $35,000,000 Cash Settlement Fund for the benefit of the Purchaser Class; and, (2) by CNL entering into revised agreements in connec-tion with a proposed Merger between CNL and its affiliate which Plaintiffs estimate reduced the amount to have been paid by CNL and its stockholders in connection with the merger by over $225 Million.  On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement of the CNL Liti-gation, noting that "Plaintiffs' counsel pursued this complex case diligently, compe-tently and professionally" and "achieved a successful result."  The Court also con-cluded that, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."

- *Inland Western Retail Real Estate Trust, Inc., et al.,* Case 07 C 6174 (U.S.D.C. N.D. Ill).  C&T served as lead litigation and co-lead counsel in this settled action which was filed in 2007 asserting federal securities law claims against Inland Western and certain of its current and former directors, officers and affiliates, and its financial advisor, by virtue of their devising and soliciting the shareholders' ap-proval of a merger of defendants' affiliate with Inland Western for $375 million worth of the Company's stock.  The Settlement required the insiders to return stock valued at $90 million.

- *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP (CD. Cal.).  The Firm was Lead Trial Counsel in this class action assert-ing federal securities law claims and claims for state law breaches of fiduciary duty.  As the principal trial assistant to Mr. Chimicles, Kimberly was an integral member of the trial team that obtained the *first* plaintiffs' jury verdict in a federal securities fraud/breach of fiduciary duty lawsuit tried to a jury in the past ten years. The total verdict of $185 million (including $92.5 million in punitive damages) was among the "Top 10" Verdicts of 2002.  The *Real Estate Associates* judgment was settled by an

# Our Attorneys-Partners

*Kimberly Donaldson Smith  cont.*

agreement approved by the Court in November 2003 for $83 million, which represented *full recovery* for the Class (and an amount in excess of the damages calculated by Plaintiffs' expert).

## Our Attorneys-Partners

# Joseph G. Sauder



JOSEPH SAUDER is a Partner in the Firm's Haverford office. Mr. Sauder concentrates his practice on prosecuting class actions, including securities fraud, shareholder derivative actions, antitrust and consumer fraud cases on behalf of shareholders, consumers, businesses and institutional clients. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.

In 2012 the National Trial Lawyers Association named Mr. Sauder one of the Top 100 Trial Lawyers in Pennsylvania.

In 2011 and 2012 Law & Politics and the publishers of Philadelphia Magazine named Mr. Sauder a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.

In August 2007, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Sauder one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community.

Mr. Sauder has handled or is currently prosecuting the following actions:

*Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation*, No. 1:10-cv-00264-CAB (N.D. Ohio). Mr. Sauder served as a lead counsel in this class action lawsuit on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.   Final approval was granted to a settlement that provides approximately $20 million worth of benefits to class members.

*Smith v. Gaiam, Inc.*, No. 09-cv-02545-WYD-BNB (D. Colo.). Mr. Sauder served as co-lead counsel on this consumer protection class action lawsuit which alleged that the defendant made affirmative misrepresentations about aluminum water bottles that it sold. Obtained a settlement that provided full recovery to approximately 930,000 class members.

## Our Attorneys-Partners

*Joseph G. Sauder cont.*

*Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D.Pa.). Mr. Sauder served as co-lead counsel on this civil rights class action lawsuit alleging that pre-trial detainees admitted to prisons operated by The GEO Group were unconstitutionally strip searched. After the Court denied the defendant's motion for judgment on the pleadings, the parties reached a $2.9 million settlement.

*Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D.Pa.). Mr. Sauder served as co-lead counsel on this civil rights class action lawsuit alleging that pre-trial detainees admitted to the Lancaster County Prison were unconstitutionally strip searched. The district court granted final approval to a $2.5 million settlement.

*In re Heartland Payment Systems Inc. Customer Data Security Breach Litig.,* No. H-09-MD-02046 (S.D.Tx.). Mr. Sauder is co-lead counsel on this case, which is the largest data breach in history. The lawsuit seeks to represent a putative class of banks, credit unions, and financial institutions that have re-issued debit and credit cards, incurred unreimbursed fraudulent charges, or were otherwise injured as a result of the data breach.

*In re Textainer Financial Services Corporation, et al.*, No. CGC 05-440303 (Superior Court of California, County of San Francisco), Mr. Sauder was actively involved in this case in which C&T was co-lead counsel. This class action alleged breach of fiduciary duty on behalf of limited partnership unit holders related to a sale of assets that allegedly provided the limited partnership holders with inadequate consideration, and where they received an allegedly misleading Proxy related to the sale. In early 2009, the court approved a $10 million settlement.

Mr. Sauder received his Bachelor of Science, *magna cum laude* in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of *Temple Law Review.*

Mr. Sauder's public service activities include teaching trial advocacy to a local Philadelphia high school team which competed in the State Mock Trial Competition. He is vice president of the Philadelphia District Attorneys' Alumni Association and on the Executive Committee of Temple Law Alumni Association. His *pro bono* activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

Mr. Sauder is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the District of Colorado.

# Our Attorneys-Partners



# Timothy N. Mathews

A partner in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D., *magna cum laude*, 2003) and Rutgers University-Camden (B.A., *summa cum laude*, 2000).

Tim has helped recover hundreds of millions of dollars in class actions and shareholder derivative actions in federal and state courts across the country. His practice focuses on securities, consumer fraud, antitrust, ERISA, and tax refund litigation. He has played a principal role in appellate litigation in the United States Courts of Appeals for the Third, Fourth, and Ninth Circuits, as well as the Supreme Court of California. Tim also serves on the Amicus Committee for the National Association of Shareholder and Consumer Attorneys (NASCAT).

Among other cases, Tim has had an active role in the following actions:

• *In re Mutual Funds Investment Litigation* (MDL 04-1586) - Tim played a prominent role on behalf of fund derivative plaintiffs in this multidistrict litigation involving alleged market timing in eighteen mutual fund families. The MDL involved hundreds of parties and has resulted in numerous settlements totaling over $250 million. On behalf of the firm in its role as lead fund derivative counsel, Tim played central role in achieving the following joint class/derivative settlement amounts:

| | |
|---|---|
| Pilgrim Baxter Subtrack | $29.8 million |
| Strong Subtrack | $13.7 million |
| One Group Subtrack | $5.5 million |
| Excelsior Subtrack | $3.9 million |
| Janus Subtrack | $1.9 million |

• *In re Colonial Bancgroup, Inc.* – Tim helped achieve a $10.5 million settlement for shareholders with Colonial Bank's former officers in this securities lawsuit involving one of the largest U.S. bank failures of all time. Claims against the bank's underwriters and accountants are still pending.

• *In re Apple iPhone/iPod Warranty Litigation* – Tim has had a central role in prosecuting this pending lawsuit brought on behalf of iPhone and iPod Touch owners whose warranty claims were denied based on "liquid contact indicators," small pieces of tape that turn red when exposed to liquid that Apple places in headphone jacks and docking ports of the devices. The plaintiffs allege that, because these indicators are placed on surfaces that are exposed to ambient moisture, they are subject to false posi-

## Our Attorneys-Partners

*Timothy N. Mathews cont.*

tives and should not have been used as a basis to deny warranty claims.

- *California Tax Refund Actions* – (*Ardon v. City of Los Angeles*, *McWilliams v. Long Beach*, and *Granados v. County of Los Angeles*) – Tim is one of the primary attorneys responsible for prosecuting these cases challenging the imposition of a utility users tax on certain telephone service by the City and County of Los Angeles and the City of Long Beach. The California Supreme Court recently ruled in Plaintiffs' favor on a critical issue in the cases, namely whether Plaintiffs can file refund claims on behalf of a class of taxpayers under Section 910 of the Government Code.

- *International Fibercom* – D&O Insurance Actions – Tim has had a central role in prosecuting several related actions in the United States District Court for the District of Arizona seeking to recover a securities fraud judgment from several Director's and Officer's Liability insurers. The first layer carrier settled for the full balance of its policy limits, and an action against the second layer carrier is pending.

- *Alberton v. Commonwealth Land Title Ins. Co.* – Tim has played a prominent role in this certified class action in the United States District Court for the Eastern District of Pennsylvania where Plaintiffs allege that Commonwealth Land Title Insurance Company and its agents overcharged homeowners for title insurance policies by failing to provide refinance and reissue rate discounts as required by law.

- *In re natural Gas Commodity Litigation* – Tim assisted lead counsel in prosecuting this multidistrict litigation alleging manipulation of the price of natural gas futures contracts which resulted in over $100 million in settlements.

Tim also supervises and coordinates the firm's Drexel University and Drexel University School of Law co-op programs.

Tim was selected as a Pennsylvania Rising Star in 2008 and 2010 by Law & Politics and the publishers of Philadelphia Magazine, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication.

While attending law school, Tim was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the *Rutgers Journal of Law & Religion* and one of the top 10 oralists in the national Judge John R. Brown Admiralty Moot Court competition. During law school, Tim also served as a research assistant to Professor Darren R. Latham and contributed research to *The Historical Amendability of the American Constitution: Speculations on an Empirical Problematic*, 55 Am. U.L. Rev. 145 (2005).

# Our Attorneys-Partners



# A. Zachary Naylor

A partner in the Wilmington office, Mr. Naylor is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication.  Mr. Naylor is admitted to practice before the Supreme Court of Delaware, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit.

Together with the Firm's Partners, Mr. Naylor has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions including:
*In re Freeport McMoRan Sulphur Inc. Shareholder Litigation*, C.A. No. 16729-NC (Del. Ch.)  This Action challenged the fairness of the terms and process of a 1998 merger between Freeport-McMoRan Sulphur Inc. and McMoRan Oil & Gas, Co. *See e.g.* 2005 Del. Ch. LEXIS 96 (Del. Ch. June 30, 2005) and 2005 Del. Ch. LEXIS 7 (Del. Ch. Jan. 26, 2005). A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

*IG Holdings, Inc. et.al. v. Hallwood Realty, LLC*, C.A. No. 20283-NC (Del. Ch.) This Action challenged the response of a Partnership's general partner to a tender offer and the eventual allocation of merger consideration between the general partner and limited partners. Ultimately, as a result of the litigation, the limited partners received a premium price for their units, protected by a minimum "floor" price.

*Saito, et.al. v. McCall, et.al.*, C.A. No. 17132-NC (Del. Ch.)  This Action involved derivative litigation on behalf of McKesson HBOC arising from alleged oversight violations by certain board members. The Court approved a settlement including a $30 million fund for the Company's behalf, mechanisms to protect the independent prosecution of certain realigned claims, and other corporate governance benefits. The settlement represents a historically large achievement for cases of this type and was characterized by the Court of Chancery as "strikingly good" particularly in light of the "onerous path" presented by Delaware law for derivative Plaintiffs.

*In re Chiron Shareholder Deal Litigation*, Consol. Case No. RG05-230567 (Cal.) & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.) These Actions sought to enjoin the proposed acquisition of shares of Chiron Corporation not already

# Our Attorneys-Partners

*A. Zachary Naylor cont.*

held by its 42% stockholder, Novartis AG. The Actions also sought to invalidate certain contractual provisions that effectively prevented Chiron's board members from effectively discharging their unremitting fiduciary duties in accordance with Delaware law.  Following briefing on a motion for preliminary injunction, a settlement was reached pursuant to which Novartis increased the offered merger consideration by $330 million.

*Sample v. Morgan, et. al., C.A. No. 1214-VCS (Del. Ch.)*  Mr. Naylor represents a Delaware corporation and its shareholders in this class and derivative action, which alleges, among other things, that members of the board of directors of Randall Bearings, Inc. breached their fiduciary duties to the company and its stockholders and committed corporate waste.  In an opinion dated January 23, 2007, the Delaware Court of Chancery upheld all claims against the directors.  *Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007). In a subsequent opinion, the Court denied a motion to dismiss for lack of jurisdiction aiding and abetting claims against the directors' and company's lawyer and his law firm. *Sample v. Morgan*, 2007 Del. Ch. LEXIS 166 (Nov. 27, 2007).

*In re Genetech, Inc. Shareholder Litigation*, C.A. No. 3911-VCS (Del. Ch.)  In this action, Plaintiffs, represented by Chimicles & Tikellis LLP, sought to enjoin an attempt by Roche, Genentech's 56% stockholder, from acquiring the remaining shares by hostile tender offer for $86.50 per share.  During the course of Plaintiffs' challenge to the tender offer, Roche increased its offer to $95 per share, leading to a settlement of the action. The Court of Chancery approved the settlement on July 9, 2009.

*In re Tricor Indirect Purchaser Antitrust Litigation*, C.A. NO. 05-360-SLR (D. Del.).  Mr. Naylor was liaison counsel in Delaware for a class of third party payers for and consumers of Tricor.  The litigation resulted in the creation of a fund of $65.7 million for indirect purchasers of phenofibrate products during the class period.

# Our Attorneys-Of Counsel



# Anthony Allen Geyelin

Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the *Villanova Law Review*, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the Firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation

## Our Attorneys-Of Counsel

# David M. Maser



is Of Counsel in the Firm's Haverford office and is admitted to practice before the Supreme Court of Pennsylvania. Mr. Maser is a member of the Firm's Client Development Group and works closely with the Firm's institutional clients.

Mr. Maser is a 1995 graduate of the Temple University School of Law and a 1992 graduate of the Pennsylvania State University where he received a B.S. in Marketing. He worked in both law and government for the past 12 years. Prior to joining the Firm, he worked with the Major League Baseball Players Association and as a government affairs specialist, representing numerous clients, including Fortune 500 companies, counseling them in legislative issues, appropriation requests, and business development opportunities at the federal, state and local levels of government. Prior to his government affairs tenure, Mr. Maser was an attorney in the City of Philadelphia Law Department during the Edward G. Rendell and John F. Street administrations.

Mr. Maser is also active in the political arena. He has worked on multiple Presidential campaigns and numerous other federal, state and local campaigns.

## Our Attorneys-Associates



# Tiffany J. Cramer

an associate in the Wilmington office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware.  She is a graduate of Villanova University School of Law (J.D. 2007) and received her undergraduate degree in Political Science from Tufts University (B.A. 2002, *cum laude*).  While in law school, she served as law clerk to the Honorable Jane R. Roth of the United States Court of Appeals for the Third Circuit.



# Vera V. Gerrity

an associate in the Wilmington office, is admitted to practice before the Supreme Courts of Delaware, New York, and Connecticut.  She is a graduate of the University of Virginia School of Law (J.D. 2008) and the University of Virginia (B.A. 2004).  While attending law school, Ms. Gerrity was a Board Member of the Public Interest Law Association and a participant in the William Minor Lile Moot Court Competition.  Following graduation, Ms. Gerrity was an associate with an international law firm where she practiced complex commercial litigation.

## Our Attorneys-Associates



# Alison G. Gushue

an associate in the Haverford Office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey. Ms. Gushue is a graduate of Villanova University School of Law (J.D. 2006) and the University of California, Los Angeles (B.A. 2003, *cum laude*). While in law school, Ms. Gushue served as Managing Editor of Student Works for the *Villanova Environmental Law Journal*. Prior to joining Chimicles & Tikellis, Ms. Gushue was counsel to the Pennsylvania Securities Commission in the Division of Corporation Finance.

## Our Attorneys-Associates



# Benjamin F. Johns

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. His entire practice is devoted to litigation, with an emphasis on antitrust, securities, and consumer fraud class actions. Ben is a member of the Firm's Case Development Group, and is responsible for identifying and assessing potential new cases.

Ben has presented oral argument before the Judicial Panel on Multidistrict Litigation several times, and has also argued motions to dismiss, for class certification and for summary judgment. He has provided substantial assistance in the prosecution of the following cases:

- *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.). Ben is actively involved in these Multidistrict Litigation proceedings, which involve allegations that dozens of banks reorder and manipulate the posting order of debit transactions. Settlements in excess of $750 million have been reached with several banks.

- *In re TriCor Indirect Purchasers Antitrust Litig.,* No. 05-360-SLR (D. Del.). Antitrust class action on behalf of indirect purchasers and third-party payors. The plaintiffs alleged that the manufacturers of a cholesterol drug engaged in anticompetitive conduct designed to keep generic versions of the drug off of the market. The indirect purchaser case settled for $65.7 million.

- *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation*, No. 1:10-cv-00264-CAB (N.D. Ohio). Class action lawsuit on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA. Final approval was granted to a settlement that provides approximately $20 million worth of benefits to class members.

- *In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888 (S.D. Fla.) Settlements in this price fixing class action totaling nearly $32 million were reached on behalf of purchasers of marine hose.

- *In re Philips/Magnavox Television Litig.*, No. 2:09-cv-03072-CCC-JAD (D.N.J.). Class action lawsuit on behalf of consumers whose flat screen televisions failed shortly after the expiration of the warranty period due to an alleged design defect.

# Our Attorneys-Associates

*Benjamin F. Johns, cont.*

Preliminary approval was granted to a settlement that makes available to class members a $4 million cash fund, in addition to other benefits.  Ben argued against one of the motions to dismiss.

- *Smith v. Gaiam, Inc.*, No. 09-cv-02545-WYD-BNB (D. Colo.). Consumer protection class action lawsuit which alleged that the defendant made affirmative misrepresentations about aluminum water bottles that it sold. Obtained a settlement that provided full recovery to approximately 930,000 class members.

- *Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D.Pa.). Civil rights class action lawsuit alleging that pre-trial detainees admitted to prisons operated by The GEO Group were unconstitutionally strip searched. After the Court denied the defendant's motion for judgment on the pleadings, the parties reached a $2.9 million settlement.

- *Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D.Pa.). Civil rights class action lawsuit alleging that pre-trial detainees admitted to the Lancaster County Prison were unconstitutionally strip searched.  The district court granted final approval to a $2.5 million settlement.

- *In re Recoton Sec. Litig.*, 6:03-cv-00734-JA-KRS (M.D.Fla.).  Class action lawsuit alleging violations of the Securities Exchange Act of 1934 against former officers and directors of a now-bankrupt company for allegedly making materially false and misleading statements regarding the accounting and management of its inventories.  The court in this case approved an all-cash settlement of $3 million.

Ben was recently elected to a three year term on the Executive Committee of the Philadelphia Bar Association's Young Lawyers Division ("YLD").  The YLD has approximately 3,000 members, and its Executive Committee oversees more than 30 committees in the areas of public service, law-related education, and service to the legal community.  The YLD is a division within the Philadelphia Bar Association, the oldest metropolitan bar association in the United States.

Ben is a graduate of the Penn State Dickinson School of Law (J.D. 2005, *Woolsack Honor Society*), and the Penn State Harrisburg School of Business Administration (M.B.A. 2004, *Beta Gamma Sigma*). While attending law school, he was a member of the Irving R. Kaufman Securities Moot Court Team.  Prior to law school, Ben attended Washington and Lee University (B.S. 2002, *cum laude*), where he played college basketball and spent a semester studying abroad in Osaka, Japan. Outside of the office, Ben has been a head coach in the Narberth basketball summer league for several years.  He was named a Pennsylvania "Rising Star" in 2010, 2011 and 2012.  He has been published in the *Philadelphia Lawyer* magazine, presented a Continuing Legal Education course to fellow lawyers, and spoken to a class of law school students about the practice.

## Our Attorneys-Associates



## Christina Donato Saler

an associate in the Haverford office, is admitted to practice before the Supreme Courts of New Jersey and Pennsylvania, the United States District Court of New Jersey and the Eastern District Court of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Rutgers University School of Law – Camden (J.D. 2003, with honors) and Fairfield University (B.A. 1995).

Following her law school graduation, Ms. Saler was an associate with the Philadelphia litigation boutique Kohn, Swift & Graf, P.C. where she prosecuted securities and consumer class actions as well as represented individual plaintiffs in First Amendment cases against media defendants. Ms. Saler gained extensive experience in all aspects of complex litigation and significant trial experience. Her accomplishments were acknowledged by her peers in 2011 and 2012 as she was selected as a Pennsylvania Rising Star SuperLawyer by Law & Politics and the publishers of Philadelphia Magazine, a designation held by only 2.5 percent of lawyers statewide.

Having joined the firm in July 2011, Ms. Saler continues to concentrate her practice on prosecuting class action litigation, including securities fraud, consumer protection, and ERISA cases on behalf of shareholders, consumers and institutional clients.

While attending law school, Ms. Saler received several academic honors including being named "Best Oralist" of her first year moot court class. She was also a member of the Rutgers Law Journal and served on the Editorial Board as the Lead Articles Editor. In 2002, the Rutgers Law Journal published her note, Pennsylvania Law Should No Longer Allow A Parent's Right to Testamentary Freedom to Outweigh the Dependent Child's "Absolute Right to Child Support," 34 Rutgers L.J. 235 (Fall 2002). Also in 2002, Ms. Saler served as law clerk to The Honorable Mark I. Bernstein, Court of Common Pleas – Commerce Court, First Judicial District of Pennsylvania.

Ms. Saler's professional career began in advertising. She was a senior account executive with the Tierney Agency where she managed the execution of various advertising campaigns and Verizon's contractual relationship with its spokesperson, James Earl Jones.

## Our Attorneys-Associates



# Matthew D. Schelkopf

an attorney in the Firm's Haverford office with extensive trial and courtroom experience.  His practice is devoted to litigation, with an emphasis on class actions involving automotive defects, consumer protection, defective products and false advertising.  Matthew is a member of the Firm's Case Development Group, and is responsible for identifying and assessing potential new cases.

While working towards his *juris doctorate*, he was an active member of the Trial Advocacy Society and an Executive Board Member of the Moot Court Honor Society. In 2000, he attended the University of Geneva Graduate Institute in Geneva, Switzerland where he studied health law and international criminal law.  He was one of five students inducted into the National Order of Barristers in 2002.

After graduation, Matthew became a criminal prosecutor with the District Attorney's Office of York County.  He litigated 27 jury trials and over 50 bench trials.  He quickly progressed to Senior Deputy Prosecutor where he headed a trial team responsible for approximately 300 felony and misdemeanor cases each quarterly trial term.  During this period, he wrote and implemented a county handbook defining extradition policies and procedures used in returning fugitives to Pennsylvania for prosecution.

In 2004, he became a full-time associate with a suburban law firm and focused on civil trial litigation throughout Pennsylvania and New Jersey.  In 2006, he was assistant counsel in a Philadelphia County trial resulting in a $30,000,000.00 jury verdict in favor of his clients – the largest state verdict recorded for that year.  He has also been responsible for numerous appeals establishing a revised application of the law in both New Jersey and Pennsylvania. See *C.W. v. Cooper Health System*, 388 N.J. 42 (NJ App. 2006) and *Miller v. Ginsberg*, 2005 Pa. Super 136 (Pa. Super. 2005).

He has presented oral arguments before the Pennsylvania and New Jersey appellate courts and also volunteered in judging the annual University of Pennsylvania mock trial competitions.  He has organized group participation in the Habitat for Humanity foundation and currently works in a *pro bono* capacity with both the Montgomery Child Advocacy Project and the Legal Aid of Southeastern Pennsylvania.  Outside of the office, Matthew enjoys mountain biking, skiing and restoring classic automobiles.

## Our Attorneys-Associates



# Scott M. Tucker

an associate in the Wilmington Office, is admitted to practice before the Supreme Courts of Delaware and Connecticut, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit. He is a graduate of the Syracuse University College of Law (J.D. 2006, *cum laude*), the Whitman School of Management at Syracuse University (M.B.A. 2006), and SUNY Cortland (B.S. 2002, *cum laude*). While attending law school, Mr. Tucker was a member of the Securities Arbitration Clinic and received a Corporate Counsel Certificate from the Center for Law and Business Enterprise.

Together with the Firm's Partners, Mr. Tucker is assisting in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including:

*In re Kinder Morgan, Inc. Shareholders Litigation,* Consol. C.A. No. 06-C-801 (Kan.) This pending action alleges the value of KMI's shares is materially in excess of the $107.50 agreed to in connection with the Buyout, that the consideration is inadequate and represents an attempt by the Buyout Group to wield its control to force out the public shareholders in order to reward itself with the profits rightfully belonging to the Plaintiffs and KMI's public shareholders, and that the proposed offer was timed to take advantage of a slump in the share price of KMI that immediately preceded the initial Buyout offer.

*In Re Yahoo! Shareholders Litigation,* Civil Action No. 3561-CC (Del. Ch.) This action alleged that Yahoo and its board of directors (the "Board") acted to thwart a non-coercive takeover bid by Microsoft, which would provide a 62% premium over Yahoo's pre-offer share price, and instead approved improper defensive measures and pursued third party deals that would be destructive to shareholder value. A settlement providing comprehensive changes to Yahoo's change in control severance plans was approved by the Court of Chancery on March 6, 2009. The settlement was characterized by one analyst as making "Yahoo much more attractive to suitors because it removes a potentially open ended liability from the acquisition equation. We see a definite positive."

Mr. Tucker is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

# Practice Areas

## Health & Welfare Fund Assets
*C&T Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, C&T seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers. In addition, C&T investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds. These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

## Monitoring Financial Investments
*C&T Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, C&T utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios. As part of this no-cost service, for each equity portfolio, C&T monitors relevant financial and market data, pricing, trading, news and the portfolio's losses. C&T investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, C&T will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

## Corporate Transactional
*C&T Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation. Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times. Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach. A substantial part of the practice of Chimicles & Tikellis LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

### Securities Fraud
*C&T Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

C&T has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud. The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock. Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock. C&T's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations. This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

### Antitrust
*C&T Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

C&T successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization. As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, C&T has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Relafen, and Paxil.

### Real Estate Investment Trusts
*C&T is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

C&T represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange. These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities. C&T prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

# Practice Areas

### Shareholder Derivative Lawsuits
*C&T is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

C&T is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders. Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor. Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored. A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for C&T's clients.

### Corporate Governance and Accountability
*C&T is a Principal Advocate for Sound Corporate Governance and Accountability.*

C&T supports the critical role its investor clients serve as shareholders of publicly held companies. Settlements do not provide exclusively monetary benefits to our clients. In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors. On behalf of our clients, we take corporate directors' obligations seriously. It's a matter of justice. That's why C&T strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

## Representative Cases

### I.     *Securities Cases Involving Real Estate Investments*

***CNL Hotels & Resorts Inc. Securities Litigation***, **Case No. 6:04-CV-1231(M.D. FL).**

C&T was Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation**,** representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.)("CNL Hotels") and certain of its affiliates, officers and directors.  CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. **In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."**   The Purchaser Class claims were settled by Settling Defendants' payment of **$35,000,000**, payable in three annual installments (January 2007 to January 2009).

On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result."  More than 100,000 class members received notice of the proposed settlement and no substantive objection to

the settlement, plan of allocation or fee petition was voiced by any class member.

***In re Real Estate Associates Limited Partnership Litigation*, Case No. CV 98-7035, United States District Court, Central District of California.**

Chimicles & Tikellis LLP achieved national recognition for obtaining, in a federal securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Senior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of $185 million (half in compensatory damages; half in punitive damages), was ranked among the top 10 verdicts in the nation for 2002. After the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million, representing full recovery for the losses of the class. At the final hearing, held in November 2003, the Court praised Counsel for achieving both a verdict and a settlement that "qualif[ied] as an exceptional result" in what the Judge regarded as "a very difficult case…" In addition, the Judge noted the case's "novelty and complexity…and the positive reaction of the class. Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

***Case Summary:*** In August of 1998, over 17,000 investors ("Investor Class") in 8 public Real Estate Associates Limited Partnerships ("REAL Partnerships") were solicited by their corporate managing general partner, defendant National Partnership Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partnerships"). In a self-dealing and interested transaction, the Investor Class was asked to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction"). In short, Plaintiffs alleged that defendants structured and carried out this wrongful and self-dealing transaction based on false and misleading statements, and omissions in the Consent Solicitations, resulting in the Investor Class receiving grossly inadequate consideration for the sale of these interests. Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading. In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners. Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for

# Representative Cases

violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

*Trial:* This landmark case is the *first* Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Trial began on October 8, 2002 before a federal court jury in Los Angeles. The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

On November 15, 2002, the ten  member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice.  The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class.  On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO.  The jury returned a verdict of $92.5 million in punitive damages.  In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002. (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002).  Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million.  The settlement represented full recovery for the losses of the class.

*Prosecuting and trying this Case required dedication, tenacity, and skill:*
This case involved an extremely complex transaction.  As Lead Trial Counsel, C&T was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents.  As Lead Trial Counsel, C&T was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis.  In addition, C&T conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

*The significance of the case:*  The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried. This case involved a paradigm of corporate greed, and C&T sent a message to not

## Representative Cases

only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat. There needs to be effective deterrents, so that "corporate greed" does not pay. The diligent and unrelenting prosecution and trial of this case by C&T sent that message.

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts. In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act. Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction. Here, the consummation of the REIT Transaction foreclosed that form of relief. Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws. C&T prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class. The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

### *Aetna Real Estate Associates LP*
Nicholas Chimicles and Pamela Tikellis represented a Class of unitholders who sought dissolution of the partnership because the management fees paid to the general partners were excessive and depleted the value of the partnership. The Settlement, valued in excess of $20 million, included the sale of partnership property to compensate the class members, a reduction of the management fees, and a special cash distribution to the class.

### *City of St. Clair Shores General Employees Retirement System, et al. v. Inland Western Retail Real Estate Trust, Inc., Case No. 07 C 6174 (N.D. Ill.).*
C&T was principal litigation counsel for the plaintiff class of stockholders that challenged the accuracy of a proxy statement that was used to secure stockholder approval of a merger between an external advisor and property managers and the largest retail real estate trust in the country. In 2010, in a settlement negotiation lead by the Firm, we succeeded in having $90 million of a stock, or 25% of the merger consideration, paid back to the REIT.

## Representative Cases

## II.    Securities Cases (Non-Real Estate)

### Continental Illinois Securities Litigation
Nicholas Chimicles served as lead counsel for the shareholder class in this action alleging federal securities fraud. Filed in the federal district court in Chicago, the case arose from the 1982 oil and gas loan debacle that ultimately resulted in the Bank being taken over by the FDIC. The case involved a twenty-week jury trial conducted by Mr. Chimicles in 1987. Ultimately, the Class recovered nearly $40 million.

### PaineWebber Limited Partnerships Litigation, 94 Civ. 8547 (S.D.N.Y.).
The Firm was chair of the plaintiffs' executive committee in a case brought on behalf of tens of thousands of investors in approximately 65 limited partnerships that were organized or sponsored by PaineWebber. In a landmark settlement, investors were able to recover $200 million in cash and additional economic benefits following the prosecution of securities law and RICO (Racketeer Influenced and Corrupt Organizations Act) claims.

### ML-Lee Litigation, ML Lee Acquisition Fund L.P. and ML-Lee Acquisition Fund II L.P. and ML-Lee Acquisition Fund (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), Delaware Federal District Court.
C&T represented three classes of investors who purchased units in two investment companies, ML-Lee Funds (that were jointly created by Merrill Lynch and Thomas H. Lee). The suits alleged breaches of the federal securities laws, based on the omission of material information and the inclusion of material misrepresentations in the written materials provided to the investors, as well as breaches of fiduciary duty and common law by the general partners in regard to conduct that benefited them at the expense of the limited partners. The complaint included claims under the often-ignored Investment Company Act of 1940, and the case witnessed numerous opinions that are considered seminal under the ICA. The six -year litigation resulted in **$32 million** in cash and other benefits to the investors.

## III.    Delaware and Other Merger and Acquisition Suits

### In re Genentech, Inc. Shareholders Litigation, C.A. No. 3911-VCS (Del. Ch)
In this shareholder class action, C&T served as Co-Lead Counsel representing

# Representative Cases

minority stockholders of Genentech, Inc. in an action challenging actions taken by Roche Holdings, Inc. ("Roche") to acquire the remaining approximately 44% of the outstanding common stock of Genentech, Inc. ("Genentech") that Roche did not already own.  In particular, Plaintiffs challenged that Roche's conduct toward the minority was unfair and violated pre-existing governance agreements between Roche and Genentech.  During the course of the litigation, Roche increased its offer from $86.50 per share to %95 per share, a $4 billion increase in value for Genentech's minority shareholders.  That increase and other protections for the minority provided the bases for the settlement of the action, which was approved by the Court of chancery on July 9, 2009.

***In re Kinder Morgan Shareholder Litigation***, C.A. No. 06-c-801 (Kansas)

In this shareholder class action, C&T served as Co-Lead Counsel representing former stockholders of Kinder Morgan, Inc. (KMI) in an action challenging the acquisition of Kinder Morgan by a buyout group lead by KMI's largest stockholder and Chairman, Richard Kinder.  Plaintiffs alleged that Mr. Kinder and a buyout group of investment banks and private equity firms leveraged Mr. Kinder's knowledge and control of KMI to acquire KMI for less than fair value.  As a result of the litigation, Defendants agreed to pay $200 million into a settlement fund, believed to be the largest of its kind in any buyout-related litigation.  The district Court of Shawnee County, Kansas approved the settlement on November 19, 2010.

***In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation***, C.A. No. 16729 (Del. Ch.).

In this shareholder class action, C&T serves as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action.  In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware.  Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

# Representative Cases

***In re Chiron Shareholder Deal Litigation*, Case No. RG05-230567 (Cal. Super.) &  *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.).**
C&T represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG. Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. C&T was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. C&T, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger.  Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, C&T, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron.  On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

***Gelfman v. Weeden Investors, L.P.*, Civ. Action No. 18519-NC (Del. Ch.).**
Chimicles & Tikellis LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware.  In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003.  Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument.  On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief.  In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).

# Representative Cases

*I.G. Holdings Inc., et al.  v. Hallwood Realty, LLC*, et al., C.A. No. 20283 (Del. Ch.).
In the Delaware Court of Chancery, C& T represented the public unitholders of Hallwood Realty L.P.  The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and  Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by C&T caused the sale of the Partnership, ultimately yielding approximately $137 per Unit for the unitholders plus payment of the attorneys' fees of the Class.

## IV.   *Delaware Shareholder Derivative Suits*

*In re McKesson Derivative Litigation, Saito*, et al.  v. McCall, et al., C.A. No. 17132 (Del. Ch.).
As Lead Counsel in this stockholder derivative action, C&T challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC.  In addition, C&T also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. C&T successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

*Barnes & Noble Inc., Delaware Court of Chancery.*
C&T is Co-Lead Counsel in this shareholder lawsuit that is brought derivatively on behalf of Barnes & Noble ("B&N") alleging wrongdoing by the B&N directors for recklessly causing B&N to acquire Barnes & Noble College Booksellers, Inc. ("College Books") the "Transaction") from B&N's founder, Chairman and controlling stockholder, Leonard Riggio ("Riggio") at a grossly excessive price, subjecting B&N to excessive risk.  The case was recently settled for nearly $30 million;  final

# Representative Cases

approval by the court is pending.

## V.   *Consumer Cases*

### *Honda Hybrid Consumer Case.*

Mr. Chimicles is co-lead counsel in a nationwide class action involving fuel economy problems encountered by purchasers of Honda Civic Hybrids ("HCH"). *Lockabey v. American Honda Motors Co., Inc.*, Case No. 37-2010-00087755-CU-BT-CTL (Super. Ct. San Diego).  After nearly five years of litigation in both the federal and state courts in California, a settlement benefiting nearly 450,000 consumers who had leased or owned HCH vehicles from model years 2003 through 2009.  Following un-precedented media scrutiny and review by the attorneys general of each state as well as major consumer protection groups, the settlement was approved on March 16, 2012 in a 40 page opinion by the Honorable Timothy B. Taylor of the San Diego County (CA) Superior Court in which the Court stated:

> *The court views this as a case which was difficult and risky... The court also views this as a case with significant public value which merited the 'sunlight' which Class Counsel have facili-tated.*

Depending on the number of claims that are filed (deadline will not expire until 6 months after a pending single appeal is resolved), the Class will garner benefits ranging from $100 million to $300 million.

### *In re Pennsylvania Baycol: Third-Party Payor Litigation*, **Case No. 001874, Court of Common Pleas, Philadelphia County**.

In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, C&T represents various Health and Welfare Funds, including the Pennsylvania Employ-ees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plain-tiffs' motion for summary judgment as to liability; this is the first and only judg-ment that has been entered against Bayer anywhere in the United States in connec-tion with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class mem-bers. The class settlement negotiated by C&T represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-

## Representative Cases

litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS).  C&T had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

### *Shared Medical Systems 1998 Incentive Compensation Plan Litigation*, **Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.**

Chimicles & Tikellis LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs.   The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim.  With the rendering of that summary judgment opinion on liability in favor of Plaintiffs, the parties reached a settlement in which class members will receive a **net recovery of the full amount of the amount that their 1998 ICP compensation was reduced**. On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

### *Wong v. T-Mobile USA, Inc.*, **Case No. CV 05-cv-73922-NGE-VMM, United States District Court, Eastern District of Michigan.**

Chimicles & Tikellis LLP and the Miller Law Firm P.C. filed a complaint alleging that defendant T-Mobile overcharged its subscribers by billing them for data access services even though T-Mobile's subscribers had already paid a flat rate monthly fee of $5 or $10 to receive unlimited access to those various data services. The data services include Unlimited T-Zones, Any 400 Messages, T-Mobile Web, 1000 Text Messages, Unlimited Mobile to Mobile, Unlimited Messages, T-Mobile Internet, T-Mobile Internet with corporate My E-mail, and T-Mobile Unlimited Internet and Hotspot. Chimicles & Tikellis LLP and the Miller Law Firm defeated a motion by T-Mobile to force resolution of these claims via arbitration and successfully convinced the Court to strike down as unconscionable a provision in T-Mobile's subscription contract prohibiting subscribers from bringing class actions. After that victory, the parties reached a settlement requiring T-Mobile to provide class members with a net recovery of the full amount of the un-refunded overcharges with all costs for notice, claims administration, and counsel fees paid in

**Representative Cases**

addition to class members' 100% net recovery. The gross amount of the over-charges, which occurred from April 2003 through June 2006, is approximately $6.7 million. To date, T-Mobile has refunded approximately $4.5 million of those overcharges. A significant portion of those refunds were the result of new policies T-Mobile instituted after the filing of the Complaint. Pursuant to the Settlement, T-Mobile will refund the remaining $2.2 million of un-refunded overcharges.

# EXHIBIT B

**HENDERSON V. VOLVO CARS**
**CHIMICLES & TIKELLIS LLP TIME REPORT**
**INCEPTION THROUGH JULY 31, 2012**

| NAME* | | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|
| Joseph G. Sauder | P | 763.75 | $700.00 | $534,625.00 |
| Sheryl Levy | FIC | 331.75 | $550.00 | $182,462.50 |
| Matthew D. Schelkopf | A | 1,823.50 | $475.00 | $866,162.50 |
| Benjamin F. Johns | A | 329.50 | $450.00 | $148,275.00 |
| William W. Grigos | FIC | 55.00 | $300.00 | $16,500.00 |
| Attorneys and Support Staff With Less Than 30 Hours | | 140.25 | | $35,547.50 |
| TOTALS: | | 3,443.75 | | $1,783,572.50 |

*P=Partner, A=Associate,  LA=Legal Assistant
FA=Former Associate, FLA=Former Legal Assistant, FIC=Former Independent Contractor

# EXHIBIT C

**HENDERSON V. VOLVO CARS**
**CHIMICLES & TIKELLIS LLP EXPENSE REPORT**
**INCEPTION THROUGH JULY 31, 2012**

| EXPENSE CATEGORY | TOTAL AMOUNT |
|---|---|
| Assessments | $35,000.00 |
| Travel, Food and Lodging | 15,183.52 |
| Photocopy - Firm | 12,786.00 |
| Computer Research | 3,523.48 |
| Misc. Client Expense | 1,827.52 |
| Express Mail | 912.68 |
| Filing Fees | 350.00 |
| Postage | 226.44 |
| Subpoena Service | 147.00 |
| Publications | 14.95 |
| **TOTALS:** | **$69,971.59** |