NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNN HENDERSON, KRISTINA KULON, B. DAVID MORBY, JASON ROBINSON, KEVIN MORRIS, and JOHN LEET, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC, and VOLVO CAR CORPORATION,<br><br>Defendants. | Civil Action No.: 09-4146 (CCC)<br><br><br><br>**OPINION** |

**CECCHI**, District Judge.

This matter comes before the Court upon Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement and Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Incentive Awards.  The Court conducted a fairness hearing on October 4, 2012. Having considered the arguments by all the parties to this matter, including several written objections to the adequacy of relief, the Court sets forth its findings below.[1]

## I. BACKGROUND

### A. Litigation History

Plaintiffs commenced this class action lawsuit on August 13, 2009.  The case involves six named Plaintiffs who are among the many thousands of purchasers and/or lessees of model years

---

[1] The Court considers any arguments not presented by the parties to be waived.  See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

2003-2005 Volvo XC90 T6 vehicles (the "Class Vehicles").  Plaintiffs allege that a design defect in the Class Vehicles caused the vehicles' transmissions to malfunction or fail shortly after the expiration of the 4 year/50,000 mile standard warranty and well before the end of the vehicles' useful lives.   Plaintiffs allege that as a result of this defect, they have incurred significant out-of-pocket costs.  Plaintiffs further claim that Defendants Volvo Cars of North America, LLC and Volvo Car Corporation (collectively, "Volvo") knew of the true nature and cause of the transmission problems, but nevertheless intentionally withheld or misrepresented such material information.  Finally, Plaintiffs argue that if they had known of the transmission defect, they would have purchased another vehicle.

On November 20, 2009, Plaintiffs filed their First Amended Complaint against Volvo. (See First Amended Complaint.)  The First Amended Complaint sought class certification of a nationwide class (applying New Jersey law) or, alternatively, certification of single-state classes for residents of New Jersey, California, Massachusetts, Florida, and Washington.  (Id.)  The First Amended Complaint asserted claims of breach of warranty, unjust enrichment, and violations of the Unfair Trade Practices and Consumer Fraud Acts of New Jersey, and/or relief under similar consumer protection statutes of other states.

On January 8, 2010, Volvo moved to dismiss the First Amended Complaint.  Thereafter, on July 21, 2010, Judge Cavanaugh granted in part and denied in part the motion to dismiss. Specifically, the Court denied Volvo's motion to dismiss Plaintiffs' claims for consumer fraud (to the extent the claims were based on omissions), breach of express warranty, breach of implied warranty, and breach of the duty of good faith and fair dealing.  The Court granted, however, Volvo's motion to dismiss Plaintiffs' unjust enrichment claims, negligent

misrepresentation claims and consumer fraud claims (to the extent they were based on affirmative misstatements).  (See 7/21/10 Decision.)

On November 1, 2010, Magistrate Judge Dickson issued an order appointing Joseph G. Sauder of Chimicles & Tikellis LLP as Interim Lead Counsel, and Bruce D. Greenberg of Lite DePalma Greenberg, LLC as Interim Liaison Counsel.  The Court also appointed other counsel proposed by Plaintiffs to the Interim Executive Committee.

The parties then commenced extensive discovery, which included the following: Class Counsel served numerous document requests and received and reviewed more than 60,000 pages of documents produced by Volvo; Class Counsel prepared, served and responded to multiple sets of interrogatories and requests for admissions; Class Counsel and Volvo's counsel took and defended many depositions; Class Counsel served numerous third party subpoenas; Class Counsel worked closely with experts and interviewed non-party witnesses; and finally, Class Counsel received and responded to inquiries from putative Class Members.  (Pl. Mot. Preliminary App. 7-8.)

The case was reassigned to this Judge on July 14, 2011.  (Docket Entry No. 64.)  The parties then began mediation sessions before John R. Phillips, an experienced mediator from the firm Husch Blackwell.  Specifically, the parties engaged in four days of in-person mediation sessions in New York City and St. Louis conducted over the course of three months.  On April 3, 2012, the parties reached a tentative agreement.  Importantly, the parties agree that all of the terms of the Settlement Agreement ("SA") are the result of extensive, adversarial, and arms' length negotiations between experienced counsel for both sides.

**B. Settlement Agreement**

*1.  Terms*

The Settlement Class consists of all "current and former owners and lessees of model years 2003-2005 Volvo XC90 T6 vehicles that were sold or leased in the United States."  (See SA at § (I)(F).)  According to the SA, Volvo has agreed to double the length of its warranty, from 4 years/ 50,000 miles to 8 years/ 100,000 miles.  (See SA at § III(C).)  In addition, Volvo agreed to reimburse owners and lessees of Class Vehicles according to the following schedule:

| Category | Reimbursement |
|---|---|
| Original owners and lessees of Class Vehicles, and original owners and lessees of Volvo Certified Pre-owned Class Vehicles, [2] whose vehicles had 100,000 or fewer odometer miles at the time of transmission replacement or repair needed to make the transmission operable | Will be reimbursed for 50% of their out-of-pocket costs of replacing, rebuilding, remanufacturing, or repairing their Original Equipment Transmission[3] or Remanufactured Transmission[4] (including parts, shipping, and labor). See SA at § (III)(A)(1). |
| All other Class Members (such as a purchaser of a used Class Vehicle that was not Volvo Certified Pre-owned) whose vehicles had 100,000 or fewer odometer miles at the time of transmission replacement or repair needed to make the transmission operable | Will be reimbursed for 25% of their out-of-pocket costs of replacing, rebuilding, remanufacturing, or repairing their Original Equipment Transmission or Remanufactured Transmission (including parts, shipping, and labor). See SA at § (III)(A)(2).[5] |

Class Members who have not experienced a transmission failure (or who experienced one after 100,000 miles) are entitled to receive from Volvo installation of the most current "TCM

---

[2] The SA defines "Volvo Certified Pre-owned Class Vehicles" as "Class Vehicles that were previously owned and then inspected and certified by Volvo Cars of North America, LLC for re-sale by an authorized dealership as a Volvo Certified Pre-owned vehicle."  (See SA at § (I)(JJ).)
[3] "Original Equipment Transmission" means "the factory-equipped transmission in a Class Vehicle at the time of that vehicle's original warranty start or in-service date."  (See SA at § (I)(V).)
[4] "Remanufactured Transmission" means "any replacement transmission sold by Volvo Cars of North America and installed in a Class Vehicle."  (See SA at § (I)(Z).)
[5] To the extent that Volvo (or third-parties) have previously covered certain costs associated with replacing or repairing a transmission, the parties agree that Volvo is entitled to an offset.

software." (See SA at § (III)(E).)  If Class Members have already paid for the most recent TCM software update as of the date of the SA, they will be reimbursed for 100% of their out-of-pocket cost for such TCM update.  (Id.)

### 2. Notice Plan

Pursuant to the SA, the BMC Group was responsible for administering the settlement notice plan.  According to Jonathan C. Reid, a Project Manager for the BMC Group, on July 16, 2012, Volvo provided to BMC a list in electronic format containing the names and addresses of 124,290 unique potential Class Members (the "Class List") (Reid Aff. at ¶ 7.)  BMC then mailed Claim Forms to 94,992 unique households on the Class List.  (Id. at ¶¶ 7, 8.)[6]

Additionally, BMC Group developed a settlement website, www.hendersontransmissionsettlement.com, on July 24, 2012.  (Id. at ¶ 11.)  The settlement website provides Class Members with the Claim Form, Settlement Notice, Settlement Agreement, "frequently asked questions," contact information for additional questions, information on which models and serial numbers are part of the Settlement, and information on how to object or opt out of the Settlement.  (Id.)  As of September 7, 2012, the website received a total of 580 visitors who have viewed a total of 1,070 web pages.  (Id.)

BMC also established a toll-free phone line (1-866-224-5076) for Class Members to call with any questions or to request copies of the Detailed Notice and Claim Form.  (Id. at ¶ 12.)  As of September 12, 2012, BMC has logged 884 calls to the toll-free line.  (Id.)

### 3. Attorney Fees, Expenses, and Incentive Awards

Finally, Volvo agreed to pay Class Counsel's attorney fees and expenses in the aggregate amount of no more than $3,000,000.00  (See SA at § (VIII)(B).)  Volvo has also agreed not to

---

[6] BMC re-mailed 235 Claim Forms that were returned by the USPS with a forwarding address. (Reid Aff. at ¶ 9.)

oppose incentive awards, in the total amount of $33,000.00, to be paid to the Named Plaintiffs as follows: $6,000.00 each for Plaintiffs Lynn Henderson, David Morby and Jason Robinson, and $5,000.00 each for Plaintiffs Kristine Kulon, Kevin Morris and John Leet.   (Id. at § (VIII)(C).)

### C. Preliminary Approval

On June 22, 2012 the Court issued an order preliminarily approving the Settlement and preliminarily certifying the Settlement Class.  (Docket Entry No. 72.)

### II. CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes.  First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a).  If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the requirements of Rule 23(b) are met.  See Fed. R. Civ. P. 23(a) advisory committee's note.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  Rule 23(a) provides that Class Members may maintain a class action as representatives of a class if they show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### A. Rule 23(a) Factors

#### 1. Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999) (citation omitted). "[G]enerally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (citation omitted).

Numerosity is easily satisfied here because there were approximately 42,000 Class Vehicles that were sold and leased throughout the United States (Oct. 4, 2012 Fairness Hearing) and BMC mailed Claim Forms to 94,992 unique households. (Reid Aff. at ¶¶ 7, 8.)

#### 2. Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement. Fed. R. Civ. P. 23(a)(2). The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that Class Members "have suffered the same injury," not merely a violation of the same law. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Furthermore, the Court noted that commonality is satisfied where common questions "generate common answers apt to drive the resolution of the litigation." Id. at 2551 (citation omitted) (emphasis in original); see also

Sullivan v. DB Invs., Inc., 667 F.3d 273, 299 (3d Cir. 2011).  The claims of Class

Members "must depend upon a common contention[,] . . . . [which] must be of such a nature that

it is capable of classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart,

131 S. Ct. at 2551.  Still, "commonality does not require an identity of claims or facts among

Class Members[;]" rather, "[t]he commonality requirement will be satisfied if the named

plaintiffs share at least one question of fact or law with the grievances of the prospective class."

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001)

(citation omitted).

Several common questions of law and fact exist in this case, including whether the

transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to

disclose the alleged defect, whether the warranty limitations on Class Vehicles are

unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims.

Thus, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . .

of the class.  The typicality requirement is designed to align the interests of the class and the

class representatives so that the latter will work to benefit the entire class through the pursuit of

their own goals."  Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998) (citation

omitted).  As with numerosity, the Third Circuit has "set a low threshold for satisfying"

typicality, stating that "[i]f the claims of the named plaintiffs and putative Class Members

involve the same conduct by the defendant, typicality is established . . . ."  Newton, 259 F.3d at

183–84; see also Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994).  The typicality requirement

"does not mandate that all putative Class Members share identical claims." 259 F.3d at 184 (citation omitted); see also Hassine v. Jeffes, 846 F.2d 169, 176–77 (3d Cir. 1988).

Here, the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect. Consequently, the named Plaintiffs' claims are typical of those brought by the Settlement Class Members at large. See, e.g., In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the District Court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the Class Members since the claims of the representatives ar[o]se out of the same conduct and core facts"); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987) (holding that the District Court did not abuse its discretion in finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

### 4. Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiffs and their Class Counsel under Rules 23(a) and (g). The class representatives should "fairly and adequately protect the interests of the class." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996). Such class representatives must not have interests antagonistic to those of the class. Id. In order to find an "antagonism between [the named] plaintiff[s'] objectives and the objectives of the [class]," there would need to be a "legally cognizable conflict of interest" between the two groups. Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat a

class action "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999) (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996)).

Here, there is no indication that the Class Representatives' interests are antagonistic to those of the class. All of the Class Representatives purchased or leased one of the Class Vehicles and were allegedly injured in the same manner based on the same alleged defect. They have also actively participated in the case, including in discovery and mediation. (Pl. Mot. Final App. 17.) Consequently, the adequacy requirement has been met.

Class Counsel and their respective law firms have extensive experience litigating complex class actions and obtaining class action settlements. (Pl. Mot. Final App. 17-18.) Thus, the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation.

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

### B. Rule 23(b)(3) Factors

The Court must next address the question of whether the class comports with the requirements of Rule 23(b). Under 23(b)(3), the Court must find both that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained below, the class action in this case readily meets these requirements of predominance and superiority.

### 1. Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (noting that the predominance requirement is "more stringent" than the Rule 23(a) commonality requirement). The Third Circuit has repeatedly held that predominance exists where proof of liability depends on the conduct of the defendant. See Sullivan, 667 F.3d at 298–301 (reaffirming the Third Circuit precedent supporting this holding). "[V]ariations in state law do not necessarily defeat predominance[] and . . . concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." Id. at 297.

Here, the class consists of individuals who purchased Class Vehicles. As such, the Class Members share common questions of law and fact, such as whether Volvo knowingly manufactured and sold defective automobiles without informing consumers. Furthermore, liability in this case depends on Volvo's alleged conduct in manufacturing and selling the Class Vehicles. Evidence in the record supports the conclusion that common questions predominate over individual questions particular to any putative Class Member. Consequently, the predominance requirement is satisfied.

### 2. A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996) (citing Katz v. Carte Blanche Corp., 496

F.2d 747, 757 (3d Cir. 1974) (en banc)).  One consideration is the economic burden Class

Members would bear in bringing suits on a case-by-case basis.  Class actions have been held to

be especially appropriate where "it would be economically infeasible for [individual Class

Members] to proceed individually."  Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J.

1997).  Another consideration is judicial economy.  In a situation where individual cases would

each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by

all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the

balance may weigh "heavily in favor of the class action."  In re Corrugated Container Antitrust

Litig., 80 F.R.D. 244, 252–53 (S.D. Tex. 1978); see also Klay v. Humana, Inc., 382 F.3d 1241,

1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be

costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and

make the same legal arguments before different courts"), abrogated on other grounds by Bridge

v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008);

Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding

that, in contrast to the multiple lawsuits that members of a class would have to file individually,

"[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond discussion").

   To litigate the individual claims of even a tiny fraction of the potential Class Members

would place a heavy burden on the judicial system and require unnecessary duplication of effort

by all parties.  It would not be economically feasible for the Class Members to seek individual

redress.  The litigation of all claims in one action is far more desirable than numerous, separate

actions and therefore the superiority requirement is met.

## III. FAIRNESS OF THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Acting as a fiduciary responsible for protecting the rights of absent Class Members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)). This determination rests within the sound discretion of the Court. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination. Id. at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability ; (5) the risks of establishing damages ; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." In re Gen.

<u>Motors</u>, 55 F.3d at 784; <u>see also</u> <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d at 535 (explaining that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the <u>Girsh</u> factors, the Court finds as follows:

**A. Complexity, Expense, and Likely Duration of the Litigation**

The first factor, the complexity, expense, and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." <u>In re Cendant Corp.</u>, 264 F.3d at 233 (quoting <u>In re Gen. Motors</u>, 55 F.3d at 812).

The claims advanced on behalf of the Settlement Class involve many complex legal and technical issues that would have required, among other things, expert testimony at trial. Moreover, the case has been vigorously litigated since August 2009, and, absent a settlement, Volvo would likely oppose class certification and move for summary judgment on the merits. (Pl. Mot. Final App. 23.)  By reaching a settlement, the parties have avoided the significant expenses connected with further pre-trial motions and preparation of trial experts.  Lastly, the Settlement provides immediate and substantial benefits for the Settlement Class.

As a result, this factor strongly weighs in favor of approval of the Settlement.  <u>See</u> <u>In re Warfarim Sodium Antitrust Litig.</u>, 391 F.3d at 535–36 (finding that the first <u>Girsh</u> factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

**B. Reaction of the Class to the Settlement**

This second factor "attempts to gauge whether members of the class support the settlement."  <u>In re Lucent Techs., Inc., Sec. Litig.</u>, 307 F. Supp. 2d 633, 643 (D.N.J. 2004)

14

(internal quotation marks and citation omitted).  The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."  In re Cendant Corp., 264 F.3d at 235.

On October 6, 2011 notice was sent directly to more than 94,992 potential Class Members.  As of the Date of the Fairness Hearing, only forty-seven members elected to exercise their opt-out rights.  (Oct. 4, 2012 Fairness Hearing.)  In addition, only twelve written objections to the Settlement were received.[7]  These numbers amount to miniscule fractions of the Settlement Class (approximately .0005% and .0001%, respectively).  See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection is a 'rare phenomenon'") (citation omitted).  The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.  See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement).[8]

### 1. Objections to the Adequacy of Relief Do Not Show the Settlement Is Unfair, Unreasonable, or Inadequate

The majority of objectors contest the 8 years / 100,000 miles cut-off for obtaining reimbursements.  (See Belardo, Meno, Acosta, Leary, Lang, Baker and Rubbo Objections.)  In

---

[7] Counsel for all parties indicated that they would consider any exclusions or objections filed as of the date of the Fairness Hearing, but would not consider any filed thereafter.  (Oct. 4, 2012 Fairness Hearing.)

[8] The following objections were filed: John Belardo [Docket No. 73], Ivan Ramos-Rodriguez [Docket No. 74], David and Fran Bayer [Docket No. 75], Julie Meno [Docket No. 76], William Rubbo [Docket No. 78], Ming Fan [Docket No. 80-2], Isidro Acosta [Docket No. 81], Robert Smith [Docket No. 82], Douglas and Karen Leary [Docket No. 83], Gregory Lang [Docket No. 84], Colonel Sharon Baker [Docket No. 85] and Harry Moses [Docket No. 86].

general, these objectors argue that the 100,000 miles cut-off is arbitrary, that they had to replace their transmissions after 100,000 miles, and that generally, transmissions often experience issues *after* 100,000 miles.  (Id.) Similarly, several objectors indicate their disappointment with the agreed-upon reimbursement rates or relief.  (See Ramos-Rodriguez, Meno Smith and Fan Objections.)   In essence, these individuals request 100% reimbursements for their costs of replacing the transmissions.  (Id.)[9]  One objector, who concedes he is entitled to the higher reimbursement rate, questioned the propriety of differing reimbursement rates tailored to the specifics of each purchase.  (See Moses Objection.)  This objector also raised purely theoretical concerns about the use of alternate dispute resolution in claims handling procedures, the requirements for documentation on claims made, and the disclosure of prior settlements.  (Id.)

The objections submitted by Class Members do not show that the Settlement is unreasonable or unfair.   "This Court's role is to determine whether the proposed relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class.  A settlement is, after all, not full relief but an acceptable compromise." Varacallo, 226 F.R.D. at 242 (internal quotation marks and citation omitted).  "[F]ull compensation is not a prerequisite for a fair settlement." Careccio v. BMW of N. Am. LLC, No. 08-2619(KSH), 2010 U.S. Dist. LEXIS 42063, at *17 (D.N.J. Apr. 29, 2010).  "Moreover, complaining that the settlement should be 'better'. . . is not a valid objection." Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 579 (D.N.J. 2010) (internal quotation marks and citation omitted).  Objections based solely on the amount of the award lack merit.  See Hall v. AT&T Mobility LLC, No. 07-5325(JLL), 2010 U.S. Dist. LEXIS 109355, at *30 (D.N.J. Oct. 13, 2010) ("[The settlement terms] were the result of an

---

[9] One couple never actually paid for a transmission repair and traded in their vehicle.  As such, they object on the basis that they will not be receiving any benefits under the SA.  (See David and Fran Bayer Objection.)

arm's length negotiation between Class Counsel and ATTM.  Such negotiations resulted in a compromise. . . . Thus, the fact that the Harter Objectors would prefer that all Class Members receive greater cash benefits . . . has no bearing on whether the terms of the Settlement Agreement itself are fair and reasonable.  After all, a settlement is, by its very nature, a compromise that naturally involves mutual concessions.").  Moreover, generalized theoretical objections unrelated to specific benefits of the class do not cast doubt on the fair and reasonable nature of the settlement.

Further, as explained above, the SA was the result of an arms-length negotiation before an experienced mediator.  The SA provides numerous benefits to Class Members, including reimbursements for transmission replacement costs and/or updates to the TCM software.  Class Counsel further explained during the Fairness Hearing that the extended warranty (of 8 years / 100,000 miles) mirrors the longest manufacturer warranties on the market.  (Oct. 4, 2012 Fairness Hearing.)  In addition, Class Counsel pointed out that the SA includes benefits for owners of pre-owned certified vehicles, a fact that Volvo would likely have contested if this action reached the summary judgment stage.  (Id.)[10]  Lastly, any Class Member who objected to the adequacy of relief had the option of opting out of the Settlement and pursuing his or her own case against Volvo.  In sum, the small number of objections presented are without merit and do not alter the Court's finding that the Settlement Agreement is fair, adequate and reasonable.

## C. The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement.  "Through this lens, courts can determine whether counsel had

---

[10] It is also important to note that notice was provided to the Attorneys General of the fifty states and no objections were filed.

an adequate appreciation of the merits of the case before negotiating." In re Cendant Corp., 264

F.3d at 235 (quoting In re Gen. Motors, 55 F.3d at 813).  "Generally, post-discovery settlements

are viewed as more likely to reflect the true value of a claim as discovery allows both sides to

gain an appreciation of the potential liability and the likelihood of success." In re Auto.

Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing Bell Atl.

Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993)).

 The Court notes that this case has been vigorously litigated for more than three years.

The parties have substantially completed discovery, which has included reviewing thousands of

pages of documents and taking numerous depositions.  In addition, the Settlement was reached

after extensive arm's length negotiations and all-day mediation sessions with John R. Phillips of

Husch Blackwell.  "Where this negotiation process follows meaningful discovery, the maturity

and correctness of the settlement become all the more apparent." In re Elec. Carbon Prods.

Antitrust Litig., 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citation omitted).  Based on the

extensive discovery and negotiations, the Court concludes that Class Counsel had a thorough

appreciation of the merits of the case prior to settlement.  Accordingly, this factor weighs

strongly in favor of approval.

 **D. Risks of Establishing Liability**

 The risks of establishing liability should be considered to "examine what the potential

rewards (or downside) of litigation might have been had class counsel decided to litigate the

claims rather than settle them." In re Cendant Corp., 264 F.3d at 237 (quoting In re Gen. Motors,

55 F.3d at 814).  "The inquiry requires a balancing of the likelihood of success if 'the case were

taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, Inc.

Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. Am. Sales

Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998)).

Class Counsel have outlined several risks to establishing liability, including that Volvo

would likely have contested whether the evidence showed pre-sale knowledge by Volvo of the

alleged common transmission defect and whether the warranty it provided with the Class

Vehicles was unconscionable.  (Pl. Mot. Final App. 28-29.)  Plaintiffs' success at trial was thus

uncertain.

In contrast, the Settlement provides immediate and certain recovery for the Class

Members.  All Class Members who filed a claim form by the deadline will receive a benefit – a

reimbursement for transmission repair costs and/or installation of the TCM software.  In light of

the uncertainty of success at trial and the certain and immediate benefit the Settlement provides,

the Court concludes that this factor weighs in favor of approval.

### E. Risks of Establishing Damages

This factor, like the factor before it, "attempts to measure the expected value of litigating

the action rather than settling it at the current time." In re Cendant Corp., 264 F.3d at 238

(quoting In re Gen. Motors, 55 F.3d at 816).  Plaintiffs' allegations of damages would require a

complicated analysis involving sophisticated expert opinions.  Volvo would likely counter with

their own experts and a "battle of the experts" would ensue.  Plaintiffs acknowledge the inherent

risks this situation presents.  (Pls.' Final Approval Mem. 30.)  The Court agrees that significant

risks exist in establishing both liability and damages and concludes that this factor weighs

strongly in favor of approval.

### F. Risks of Maintaining Class Action Status Through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement. "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537 (internal quotation marks and citation omitted). If the litigation proceeded, Volvo would have likely argued that certification was inappropriate because individual issues predominate over common issues. For example, Volvo might argue that individual facts, such as driving habits, vehicle maintenance and other conditions, would make class certification improper. Plaintiffs concede that class action status would have been, at the very least, contested at trial, and that maintaining class action status through trial was not certain. (Pl. Mot. Final App. 30.) Thus, this factor weighs in favor of approval.

### G. The Settling Defendant's Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d at 240. Plaintiffs acknowledge that "there is currently no indication that Volvo here would be unable to withstand a more significant judgment," but "to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the SA is within the range of reasonableness and provides substantial benefits to the Class." (Pl. Mot. Final App. 31.) Thus, the Court is satisfied that the Settlement is fair, reasonable, and adequate, despite the possibility that Volvo could pay a greater sum. See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d at 344 (finding the settlement

figure fair, reasonable, and adequate despite defendants' ability to withstand greater judgment, in light of the substantial benefits provided to Class Members); In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 262–63 (D.N.J. 2000), aff'd, In re Cendant Corp., 264 F.3d 201 (approving settlement despite lack of evidence of defendant's ability to withstand greater judgment); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1302–03 (D.N.J. 1995) (concluding the settlement was fair, adequate, and reasonable despite finding defendant could withstand greater judgment).

Class Members will receive substantial benefits from the Settlement, and any ability of Volvo to withstand a greater judgment is outweighed by the risk that Plaintiffs would not be able to achieve a greater recovery at trial. In addition, as discussed above, there are significant risks to establishing liability and damages. See Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150–51 (D.N.J. 2004) (finding that the difficulties plaintiffs would have in certifying the class and proving damages at trial "diminish[es] the importance of this factor").

In light of these considerations, the Court concludes that this factor weighs in favor of approval.

### H. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors, concerning the range of reasonableness of the Settlement fund in light of the best possible recovery and the attendant risks of litigation, weigh in favor of settlement.

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh.

In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted).

Plaintiffs argue that, given the size of the Settlement Class, the potential benefits available to Class Members, and the risks in proving liability and damages and in obtaining class certification, the Settlement is, fair, adequate and reasonable.  (Pl. Mot. Final App. 32.)  The Court agrees with Plaintiffs and finds that these factors weigh in favor of approval.

### I. Summary of Girsh Factors

In conclusion, the Court holds that the nine Girsh factors overwhelmingly weigh in favor of approval.  The Settlement Agreement was reached after arm's-length negotiations between experienced counsel and after completion of a significant amount of discovery and motion practice.  Therefore, the Court concludes that the settlement represents a fair, reasonable, and adequate result for the Settlement Class considering the substantial risks Plaintiffs face and the immediate benefits provided by the Settlement.  See Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011) (finding that freely transferrable gift cards usable for purchases at Rite Aid stores were fair to Class Members).

### IV. NOTICE

"In the class action context, the district court obtains personal jurisdiction over the absentee Class Members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."  In re Prudential, 148 F.3d at 306 (citation omitted).  Under Federal Rule of Civil Procedure 23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B);  See also Eisen v. Carlisle & Jacquelin, 417 U.S.

156, 175–76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (finding that Rule 23(c) includes an "unambiguous requirement" that "individual notice must be provided to those Class Members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified under Rule 23(b)(3) and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Larson v. Sprint Nextel Corp., No. 07-5325(JLL), 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009). 23(c)(2)(B) compliant notice must inform Class Members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the Class Members' right to retain an attorney; (5) the Class Members' right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on Class Members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 177 F.R.D. 216, 231 (D.N.J. 1997) (citation omitted).

As explained above, the Settlement Administrator mailed the Court-approved settlement notice to the 94,992 households on the Class List. (Reid Aff. at ¶ 7.) Additionally, a website, www.hendersontransmissionsettlement.com, provided the Settlement Notice and other pertinent documents, including the Claim Form and the Settlement Agreement, contact information for "frequently asked questions," information on which models and serial numbers are part of the Settlement, how to submit a Claim Form, and how to object to or opt out of the Settlement Agreement. (Id. at ¶ 11.) Finally, the Settlement Administrator established a toll-free telephone number that Class Members could use if they have questions about the Settlement. (Id. at ¶ 28.)

The Court finds that the parties complied with the requirements set forth by Rules 23(c)(2)(B) and 23(e).  The notice plan was thorough and included all of the essential elements necessary to properly apprise absent Settlement Class Members of their rights.  The written notice included (1) the nature of the claims in this case; (2) a description of the Settlement Class; (3) a description of the Settlement and the relief provided under the Settlement Agreement; (4) information on how to obtain benefits from the Settlement; (5) the deadline to object to the Settlement or request exclusion from the Settlement; (6) the consequences of requesting exclusion or not doing so; (7) a Web site and phone number for obtaining more information about the Settlement, the parties involved, and the procedures to follow to object or exclude oneself; (8) the date of the fairness hearing; and (9) relevant information regarding the fairness hearing.  (Pl. Mot. Prelim. App. Ex. B.)  The notice also informed the Settlement Class Members that they may hire their own attorneys at their own expense.  (Id.)  Further, the notice was written simply and plainly, and the notice methodology was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice.

Finally, notice of the SA, along with the other Settlement documents, were provided to the Attorneys General of each of the 50 states pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  (Reid Aff. at ¶¶ 3-6.)  None of these officials have expressed any objection to any aspect of the SA.  (Pl. Mot. Final App. 26.)

In conclusion, the Court finds that the notice fully complied with the requirements of Rules 23(c)(2)(B) and 23(e).

## V. ATTORNEY FEES, EXPENSES, AND INCENTIVE AWARDS

Class Counsel filed an unopposed motion for an award of attorney fees and expenses in the amount of $3,000,000.00 and for incentive awards of $6,000.00 each for Plaintiffs Lynn

Henderson, David Morby, and Jason Robinson, and $5,000.00 each for Plaintiffs Kristine Kulon, Kevin Morris, and John Leet.  The Court has considered the parties' written submissions and the oral arguments made during the fairness hearing.  For the reasons that follow, the Court will grant the requested attorney fees, reimbursement of expenses and incentive award payments.

### A. Standard for Judicial Approval of Fees

Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous.  In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons that support its fee determination.  Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 359 (E.D. Pa. 2011); In re Rite Aid, 396 F.3d at 301.  "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award."  Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 248 (D.N.J. 2005).

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request — the lodestar approach and the percentage-of-recovery approach."  Id. (internal quotation marks and citation omitted).  The lodestar method is generally applied in statutory fee shifting cases and "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."  In re Cendant Corp.,

243 F.3d at 732 (internal quotation marks and citation omitted). The lodestar is also preferable where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821; see also In re Rite Aid, 396 F.3d at 300. The percentage-of-recovery method is preferred in common fund cases, as courts have determined "that Class Members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted). The Court has discretion to decide which method to employ. Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted).

Plaintiffs argue and the Court agrees that the lodestar method is appropriate in this case. Although this case does not involve a fee shifting statute, the combination of reimbursements and software upgrades "evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821.

**B. Lodestar Analysis**

The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305; see also In re Diet Drugs Prod. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009). When performing this analysis, the Court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." In re Rite Aid, 396

F.3d at 306. The lodestar figure is presumptively reasonable when it is calculated using a

reasonable hourly rate and a reasonable number of hours. Planned Parenthood of Cent. N.J. v.

Att'y Gen. of N.J., 297 F.3d 253, 265 n.5 (3d Cir. 2002) (citations omitted).

  After calculating the lodestar amount, the Court may increase or decrease the amount

using the lodestar multiplier. The multiplier is calculated by dividing the requested fee by the

lodestar figure. "The multiplier is a device that attempts to account for the contingent nature or

risk involved in a particular case and the quality of the attorneys' work." In re Rite Aid, 396

F.3d at 305–06 (footnote omitted). The multiplier "need not fall within any pre-defined range,

provided that the District Court's analysis justifies the award." Id. at 307 (footnote omitted).

Further, the Court is not required to engage in this analysis with mathematical precision or

"bean-counting." Id. at 306. Instead, the Court may rely on summaries submitted by the

attorneys; the Court is not required to scrutinize every billing record. Id. at 306–07.

  Based upon their usual hourly rates, Class Counsel calculated a combined lodestar figure

of $2,651,100.50[11] from the start of litigation through July 31, 2012 (Pl. Fee Br. 16.)[12] The

lodestar figure includes $107,083.45 in unreimbursed litigation expenses. (Id.) In support of

their fee application, Class Counsel provided five different declarations and numerous exhibits

detailing the usual billing rates for each attorney, paralegal, and staff member that worked on the

case. (See Decl. of Joseph G. Sauder, Decl. of Daniel C. Levin, Decl. of James C. Shah, Decl. of

---

[11] This reported time does not include any of the billable time after July 31, 2012, and therefore does not account for the work performed by Class Counsel subsequent to that date, or for the future work that will be associated with claims and settlement administration. (Pl. Fee Br. 15.)
[12] Only the law firm of Chimicles & Tikellis LLP worked through July 31, 2012. The remaining firms, Lite DePalma Greenberg, LLC, Levin, Fishbein, Sedran & Berman, Shepherd, Finkelman, Miller & Shah, LLP, and the Law Office of Christopher G. Hayes, worked through June 30, 2012.

Bruce D. Greenberg, Decl. of Christopher G. Hayes.) [13]  Class Counsel calculated the lodestar

figure taking all of these billing rates into account.  The hours billed by Class Counsel reflect the

following work: serving Document Requests, reviewing more than 60,000 pages of documents,

preparing and responding to Interrogatories, serving third party subpoenas, retaining and

working closely with an automotive expert, interviewing non-party witnesses, responding to

hundreds of inquiries from putative Class Members, participating in the depositions of the six

named Plaintiffs and other technical witnesses, attending mediation and engaging in extensive

adversarial and arms' length negotiation.  (Pl. Fee Br. 4-7.)

     The Court finds the billing rates to be appropriate and the billable time to have been

reasonably expended.  (See Decl. of Joseph G. Sauder, Decl. of Daniel C. Levin, Decl. of James

C. Shah, Decl. of Bruce D. Greenberg, Decl. of Christopher G. Hayes.)  These hourly billable

rates – ranging from $175.00 to $700.00 per hour depending on the individual – are entirely

consistent with hourly rates routinely approved by this Court in complex class action litigation.

See In re Merck & Co. Vytorin ERISA Litig., No. 08-CV-285, 2010 U.S. Dist. LEXIS 12344, at

*45 (D.N.J. Feb. 9, 2010) (approving rates between $250.00 and $835.00 per hour); McGee v.

Cont'l Tire N. Am., Inc., No. 06-6234, 2009 U.S. Dist. LEXIS 17199, at *50 (D.N.J. Mar. 4,

2009) (approving hourly rates of $495.00 and $600.00).  The lodestar is thus presumptively

---

[13] The breakdown is as follows: Chimicles & Tikellis LLP billed 3,443.75 hours at a total
lodestar of $1,783,572.50.  The firm's total expenses were $69,971.59.  Shepherd, Finkelman,
Miller & Shah, LLP billed 805.30 hours at a total lodestar of $438,048.  The firm's expenses
were $21,753.28.  Lite DePalma Greenberg, LLC billed 645.50 hours at a total lodestar of
$294,867.50.  The firm's expenses were $8,969.20.  Levin, Fishbein, Sedran & Berman billed
107.50 hours at a total lodestar of $63,925.00.  The firm's expenses were $6,389.38.  The Law
Office of Christopher G. Hayes billed 108.75 hours at a total lodestar of $70,687.50.  The firm
had no expenses.  This resulted in a combined lodestar of $2,651,100.50 and $107,083.45 in
collective expenses.  (Pl. Fee Br. 15-16.)

reasonable.  Therefore, the Court sees no reason to find the lodestar figure of $2,651,100.50 unreasonable.

The lodestar multiplier is approximately 1.13.  (Pl. Fee Br. 24-25.)  If the additional expenses of $107,083.45 are considered separately and subtracted from the $3,000,000.00, then the multiplier becomes approximately 1.09.  (Id. at 24)  Either one of these multipliers is within the range found to be acceptable by the Third Circuit and this Court.  See In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742 (approving a suggested multiplier of three and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); In re Schering-Plough Corp., 2012 U.S. Dist. LEXIS 75213, at *22 (noting that a 1.6 multiple "is an amount commonly approved by courts of this Circuit," and approving it as reasonable); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (finding a multiplier of almost 2.3 to be reasonable).  Thus, this Court considers the lodestar multiplier to be reasonable.

### C. Percentage of Recovery Cross-Check

The Third Circuit has identified a non-exhaustive list of factors that a district court should consider in its percentage of recovery analysis:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

In re Rite Aid, 396 F.3d at 301 (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  The district court need not apply these Gunter fee award factors in a formulaic way.  Certain factors may be afforded more weight than others.  Id. at 301.  The district court should engage in a robust assessment of these factors.  Id. at 302; see also Gunter,

223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award.  Given the similarity and overlap of the Gunter and Girsh factors, the Court incorporates by reference the reasons given for approval of the Settlement Agreement. The Court will now discuss additional reasons that support approval of attorney fees in this matter.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

With regard to the size and nature of the Settlement Fund and the number of persons benefitted by the Settlement Agreement, Class Counsel obtained a settlement that substantially benefits "[a]ll current and former owners and lessees of model years 2003-2005 Volvo XC90 T6 vehicles that were sold or leased in the United States."  (Pl. Fee Br. 7.)  Further, pursuant to the Settlement Agreement, Volvo will "double the length of its warranty (from 4 years/50,000 miles to 8 years/100,000 miles), while reimbursing original owners and lessees of Class Vehicles and original owners and Lessees of Volvo Certified Pre-owned Class Vehicles fifty percent (50%) of transmission replacement costs and necessary similar repair costs occurring during the extended warranty period."  (Id. 7-8.)  Class Members who were not original owners or lessees of the two Class Vehicles "will be entitled to twenty five percent (25%) of transmission replacement costs and necessary similar repair costs occurring during the extended warranty period."  (Id. 8.) Finally, all Class Members will be entitled "to receive a TCM software inspection at a certified Volvo dealership" and a free upgrade to the most current TCM software update, which would have "cost[] approximately $120-200, including labor."  (Id. 9-10.)  Members who previously paid for the most recent TCM software update will also be able to receive a 100% reimbursement

of out-of-pocket costs upon submission of a timely claim form. (Id.) Given the potential

combined value of the reimbursements, and the number of Class Members potentially entitled to

benefits, this factor weighs in favor of approval.

### 2. Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of substantial objections by Settlement Class Members to the fees requested

by Class Counsel strongly supports approval. The deadline for objections has passed, and only

one Settlement Class Member, Harry Moses [Docket No. 86], has objected to the proposed fee

award. Specially, Mr. Moses argues that because he is currently unaware of the total amount that

will eventually be paid to the class, awarding attorney fees now is premature and the fee award

may "dwarf" the amount paid to the class. However, as explained above, the fee award is

reasonable considering the significant amount of time and effort expended by Class Counsel on

this case. In addition, the fee award will not affect the total settlement benefits awarded to the

Class and will be paid separately from and in addition to such benefits. As such, this factor

weighs in favor of approval. See In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426, 435

(D.N.J. 2004) (finding that this factor weighed in favor of approval where only nine of nearly

three million potential Class Members objected to the fee application).

### 3. Skill and Efficiency of Attorneys

As discussed in the section on class certification, Class Counsel are experienced in

litigating and settling consumer class actions. Class Counsel obtained substantial benefits for the

Class Members – despite vigorous defense by Volvo's counsel – a consideration that further

evidences Class Counsels' competence. Thus, this factor also weighs in favor of approval of the

fee award.

### 4. The Complexity and Duration of the Litigation

As explained in the discussion of the <u>Girsh</u> factors, this case has been litigated for over three years and concerns complex legal and factual issues.  The parties reached the settlement after extensive discovery and arm's length settlement negotiations.  Thus, this factor weighs in favor of approval.

### 5. The Risk of Non-Payment

Class Counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts.  Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees.  <u>See</u> <u>In re Prudential-Bache Energy Income P'ships Sec. Litig.</u>, No. 888, 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").  Class Counsel invested substantial effort and resources to obtain this favorable Settlement. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Litigation

Class Counsel and Liaison Counsel report nearly 5,110 hours of contingent work on this case for the past three years.  (Pl. Fee Br. 22.)  Further, five different firms worked jointly on this case.  Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorney fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an

attorney would have received if the fee were negotiated on the open market.  See, e.g., In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085(FSH), 2005 U.S. Dist. LEXIS 27013, *42–46 (D.N.J. Nov. 9, 2005).

In O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 304 (E.D. Pa. 2003), a fee of $4,896,783.00 was awarded in a class action involving allegedly defective rear lift-gate latches. (Pls.' Fee Br. 23.)  Similarly, in McGee v. Cont'l Tire N. Am., Inc., No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009), the Court awarded $2,274,983.70 in fees and expenses in a consumer class action.    Given these, Class Counsel's request of $3,000,000.00 is reasonable and commensurate with awards in comparable cases.

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace.  "The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee [that] would be negotiated if the lawyer were offering his or her services in the private marketplace."  In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 44–45.  "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible."  In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").  To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation.  In re Cont'l Ill. Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining

evidence about the terms of retention in similar suits, suits that only differ because, since they are not class actions, the market fixes the terms").

As explained above, Class Counsel used their standard hourly rates, which they regularly use in complex class action matters, to calculate the lodestar amount.  (See Decl. of Joseph G. Sauder, Decl. of Daniel C. Levin, Decl. of James C. Shah, Decl. of Bruce D. Greenberg, Decl. of Christopher G. Hayes.)  These hourly billable rates are consistent with hourly rates routinely approved by this Court in complex class action litigation.  See In re Merck & Co., 2010 U.S. Dist. LEXIS 12344 at *45; McGee, 2009 U.S. Dist. LEXIS 17199 at *50.

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class Counsel is fair and reasonable under the lodestar method.  The Court will approve Class Counsel's application for attorney fees in the amount of $3,000,000.00

### D. Expenses

Class Counsel also seek reimbursement of $107,083.45 in litigation expenses to be paid from the $3,000,000.00 award.  (Pl. Fee Br. 26.)  "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  In re Safety Components Int'l, Inc., 166 F. Supp. 2d at 108 (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)).  Class Counsel contend that these expenses reflect costs expended for the purposes of litigating this action, including costs associated with creating and maintaining electronic document databases, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs. (See Decl. of Joseph G. Sauder, Decl. of Daniel C. Levin, Decl. of James C. Shah, Decl. of Bruce D. Greenberg.)  The Court finds that the expenses were adequately documented and

reasonably and appropriately incurred in the litigation of the case.  See In re Datatec Sys. Sec.

Litig., No. 04-CV-525(GEB), 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007).

   **E. Incentive Awards**

   Finally, Class Counsel also request that the Court approve the payment of incentive

awards of $6,000 each to Plaintiffs Lynn Henderson, David Morby, and Jason Robinson, and

$5,000 each to Plaintiffs Kristine Kulon, Kevin Morris, and John Leet, for a total of $33,000.00.

(Pl' Fee Br. 1.)  "[C]ourts routinely approve incentive awards to compensate named plaintiffs for

the services they provided and the risks they incurred during the course of the class action

litigation."  Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 577 (D.N.J. 2010) (internal

quotation marks and citation omitted).  Class Counsel explain that these representatives were all

deposed, responded to Volvo's interrogatories and document requests, traveled long distances for

certain proceedings, and participated in numerous conferences and meetings with their attorneys.

In addition, the incentive awards will be paid separate from the consideration in the SA and will

therefore not reduce the recovery to any Class Member.  (Pl. Fee Br. 27.)  See In re LG/Zenith

Rear Projection Television Class Action Litig., No. 06-5609, 2009 U.S. Dist. LEXIS 13568, at

*25 (D.N.J. Feb. 18, 2009) (approving incentive award that "is small, and will not decrease the

recovery of other Class Members"); Bredbenner v. Liberty Travel, Inc., No.09-905, 2011 U.S.

Dist. LEXIS 38663, at *63-68 (D.N.J. Apr. 8, 2011) (approving incentive awards of $10,000 to

each named plaintiffs); In re Ins. Brokerage Antitrust Litig., 2012 U.S. Dist. LEXIS 46496, at

*58 (approving incentive awards of $5,000 to each of the class representatives).  Given the

duration of the litigation and the extent of personal involvement, the Court finds that the named

Plaintiffs are entitled to the requested incentive awards.

### F. Conclusion

For the foregoing reasons, the Court grants the application of Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments.

## VI. CONCLUSION

Because the named Plaintiffs have satisfied all of the requirements of Fed. R. Civ. P. 23, this Court certifies the class for purposes of this Settlement and approves the Settlement Agreement. The Court also grants the application of Class Counsel for attorney fees, reimbursement of expenses and incentive award payments.

An appropriate Order accompanies this Opinion.


Dated: March 22, 2013

**HON. CLAIRE C. CECCHI**
**United States District Judge**

36